184 So. 338

## FIRST NAT. BANK OF ANNISTON v. CITY OF JACKSONVILLE et al.

7 Div. 539.

Supreme Court of Alabama.

Oct. 25, 1938.

Rehearing Denied Nov. 12, 1938.

640

D. W. Goodlett, pro se, and for appellees.

Cabaniss & Johnston, of Birmingham, for W. I. Greenleaf, amicus curiæ.

Knox, Acker, Sterne & Liles, of Anniston, for appellant.

BOULDIN, Justice.

In our opinion the case is not governed by the law of private trusts, wherein there is a settler, a beneficiary as the equitable owner of the fund, and a trustee for pres-

ervation and accumulation for a specified time.

On the other hand this is a public fund, owned by a governmental body or agency, to be used by the public authorities for public uses, either strictly governmental or proprietary in such sort as municipal governments may lawfully engage in.

It appears the City of Jacksonville, and its City Board of Education, owned public school buildings and grounds with which they were operating local public schools— state schools. The state school authorities desired to take over the operation of these schools so as to conduct them as a model school in connection with a State Teacher Training Institute. To that end the state took over the legal title, transferred the school management from one state agency to another. The property conveyed continued to be devoted to the same public uses as before. To acquire the legal title and transfer of control the state paid the money now in question.

The transaction on its face contemplated the city would no longer engage in operating public schools. A City Board of Education would no longer have legal functions to perform and would cease to be.

But, said the local authorities, here is this fund, derived not from a sale of school properties in the ordinary sense, but from a mere change of set-up in the operation of public schools with public monies, not including this fund, and using the same school properties.

What shall be done with this money? Maybe, said these public authorities, this set-up may not prove satisfactory, and we may wish to again operate public schools under local school authorities authorized by law. Let's conserve this fund for a waiting period of 15 years. Thereupon, the fund was deposited in the bank under the trust agreement. By this agreement the bank was made custodian for safe-keeping and accumulation. It could hardly be contended the bank was more than a managing agent for these purposes.

Quite clearly it was never contemplated this fund should ever be employed for public school purposes, except on the contingency that the arrangement out of which it grew should prove undesirable. There was a mere tie-up of the fund for successors to determine whether it should be so used. Apart from any questions of legality of the transaction in whole or in part, and dealing with the status quo, here is a voluntary trust in which the settler is the beneficiary. The settler is a governmental unit or agency, functioning through public authorities who represent the school children and the general public in relation to this fund. The school children are not beneficiaries in the sense of equitable owners of private property. Governing agencies are set up to safeguard their interests as a public interest.

The sole question of importance is, did the stipulation of a test period of 15 years, by the then governing body, strip their successors, with like governing power, of all authority to ascertain whether the occasion for a waiting period has now passed, and to declare and prove in a court of equity, that this, the sole purpose of the trust, has been fulfilled and it should end?

Our view is the then governing body had no such power. They had no power to say: Our successors can have nothing to do with this, unless they choose to retake the fund for operation of public schools under local authority. No power to say: We pass on to successive boards for fifteen years this right of election, we fix fifteen years as an arbitrary period within which no governing body may determine that the new set-up is a success and satisfactory to the public they represent.

Probably, the then governing body had no such purpose; but fixed a maximum period, subject to like powers in each successive board.

In either event, the case is sui generis. Public policy is involved in a tie-up of public funds on contingencies for fifteen years.

Our opinion, therefore, is that the decree of the trial judge should be affirmed.

Affirmed.

GARDNER, THOMAS, and KNIGHT, JJ., concur.

ANDERSON, C. J., and BROWN and FOSTER, JJ., dissent.

FOSTER, Justice (dissenting).

The complainant in the circuit court, in equity, who is also the appellant in this court, sought in express terms to invoke the benefit of the Uniform Declaratory Judgment Act of September 7, 1935 (see page 777, Acts).

The complainant is the trustee in an express trust and the respondents are the

beneficiaries. They all seek to accomplish the same purpose and have agreed in respect to the termination of the trust. The purpose of the bill may be sustained also in that equity may in its discretion decree a termination of the trust upon an effectual agreement made by all the parties, if within their power to do so, that there may be a judicial declaration of the effect of such an agreement for the protection of the trustee, over whom a court of equity has a special jurisdiction. 26 R.C.L. 1213, section 55; 65 Corpus Juris 353, 354, section 128.

The bill makes such prayer and seeks to come within the principle so declared.

The case so made is that on August 9, 1929, the trust agreement in question was executed by complainant as trustee; the city of Jacksonville, Alabama, and the City Board of Education of that city. The city school property owned by the board and the city was conveyed by them to the state of Alabama, which maintains in the city a State Teachers' College to train state teachers, and which needs a model school for that purpose. The state paid the consideration partly in cash and the balance was represented by warrants payable in deferred installments executed by the State Board of Education and the Teachers' College payable to the City Board of Education. The funds so realized are the subject of the trust, which provides:

"Whereas it is the desire and intent of the City Board of Education of the City of Jacksonville, Alabama, and the City of Jacksonville, Alabama, a municipal corporation, to create a trust fund of the funds received from the sale of said property, the principal and proceeds of said trust to be held for the future needs of the public school, or schools, of the City of Jacksonville, Alabama. * * *

"(4) If at any time during the period of this trust in the judgment of the City Board of Education of Jacksonville, Alabama, and in the judgment of the City Council of Jacksonville, Alabama, it becomes necessary and desirable to re-invest the proceeds of said trust, or any portion of same for public school purposes in the City of Jacksonville, Alabama, upon reasonable notice to the trustee, which notice shall be not less than three months, may make demand of the trustee for refund to them of so much of the trust, both principal and interest, as they may require, provided, however, that in the event said notice is given to said trustees cancelling the trust, in whole or in part, prior to the date herein above fixed for terminating said trust by limitation, said trustee shall in no event be required to pay over any funds which it has invested prior to said notice and which have not matured, or are not due. The trustee shall only be required to surrender so much of said trust as may be in its possession uninvested at the time fixed in the notice for surrendering same, and in the event it does not have in its possession at the time fixed in the notice for surrender all, or a portion of said trust, an amount sufficient to comply with said notice, it shall only be required to pay over to the City Board of Education of Jacksonville, Alabama, and the City of Jacksonville, Alabama, a municipal corporation, such funds as are in its hands, and to pay the remaining funds as soon as same mature, or are collected.

"(5) Said trustee is directed, authorized and empowered out of the principal of said trust, or the income from same, either or both, to make the following disbursements:

"(a) To pay to the First National Bank of Anniston, Alabama, the sum of $5,575.-26, with interest from June, 1929, to date of payment, said note having been executed by the City Board of Education of Jacksonville, Alabama, and the City of Jacksonville, Alabama, a municipal corporation to the First National Bank of Anniston, Alabama, on the 19th day of June, 1929, payable on demand, the proceeds of which were used for public school purposes by the makers of same.

"(b) On the first day of August, 1929, or on such date as same may be due, and each years thereafter until the bonds hereinafter mentioned are paid in full, as trustee shall forward to the Investors' Syndicate, at Minneapolis, Minnesota, the sum of $444.00, or such sum as may be required, as a sinking fund to be used by said Investors' Syndicate for paying said bonds when same mature.

"(c) On the interest due periods of this year, and each year thereafter until the bonds hereinafter referred to have been paid in full, the trustee is directed, authorized and empowered to pay the interest on said bonds as said interest matures.

"(d) The bonds referred to in (b) and (c) above are three issues of school bonds now outstanding, authorized by the City of Jacksonville, Alabama, for school pur-

poses, the first issue being dated July 1, 1916, and due July 1, 1936, in the sum of $10,000.00; the second issue being dated September 1, 1916, and due September 1, 1936, in the sum of $2,500.00 and the third issue being dated August 1, 1925, and due August 1, 1945, in the sum of $15,000.00, the first two issues bearing interest at the rate of five percent per annum, and the third bearing interest at the rate of five and one-half percent per annum."

The bill alleges that the trust has continued, and is now in operation; that the trustee has purchased and now has in its possession $17,500 of the bonds referred to; $2,500 of one issue and $15,000 of another.

It is then alleged that the city council passed a resolution requesting and directing the complainant as trustee to surrender said bonds to it for cancellation so as to reduce its outstanding debt to enable it to borrow money for waterworks purposes. Also, that the City Board of Education passed a resolution to the same effect.

The answers admit those facts and allege: "That at the time the said agreement was made and entered into and said sale of the school properties was consummated, there was uncertainty in the minds of the City Board of Education of the City of Jacksonville, Alabama, as to whether the plan for having its public schools operated by and through the State Teachers College of the City of Jacksonville, Alabama, would prove satisfactory; therefore, to protect the City Board of Education of the City of Jacksonville, Alabama, a municipal corporation, against the uncertain results of having the public schools of said city operated by and through the State Teachers College at Jacksonville, Alabama, said City Board of Education of the City of Jacksonville, Alabama, and the City of Jacksonville, Alabama, a municipal corporation, voluntarily created a trust of the funds derived from the sale of their public school property, as evidenced by the instrument set forth and described in said bill. More than nine years have elapsed since the sale of said school property and the creation of said trust, and the operation of the public school system in the City of Jacksonville by and through the State Teachers College having proven entirely satisfactory during said period, your respondents are of the opinion and so aver that there will never be a need for the City of Jacksonville, Alabama, a municipal corporation, and the City Board of Education of the City of Jacksonville, Alabama, to re-enter the conduct of their own public school system and to again acquire their own school property for the purpose of conducting their own public school system. Respondents aver that it is their opinion that the purposes for which the trust was created have been fully fulfilled and that there is no longer a need for the continuance of said trust; that said trust was voluntarily entered into by and between the First National Bank of Anniston, Alabama, as trustee, and the City of Jacksonville, Alabama, a municipal corporation, and the City Board of Education of the City of Jacksonville, Alabama, as beneficiaries. Respondents further aver that since in their opinion there is no need for a further continuance of said trust, they, as duly elected, qualified and acting members of the City Board of Education of the City of Jacksonville, Alabama, have consented for and do assent to the surrender to the City of Jacksonville, Alabama, of the school bonds mentioned and described in said bill and said resolutions, provided it is legal and proper for said bonds to be surrendered, cremated and extinguished. Your respondents, not knowing nor having been advised as to the legal rights of the trustee in the premises with respect to said bonds, neither admit nor deny that said trustee is authorized to surrender said bonds as requested and directed, or that if same are surrendered that the City of Jacksonville, Alabama, a municipal corporation, has the legal right to retire, cremate and extinguish same. The rights, duties and obligations of the trustee being unknown to your respondents, they submit themselves to the jurisdiction of this court for instructions and directions with respect to the issues contained in said bill."

The evidence was taken, and the decree of the court found the facts to be as so alleged in the bill and answer, and ordered a termination of the trust and a surrender of the bonds to the city.

The appeal by complainant is from that decree, being unwilling as the brief declares to rely on the decree of the trial court to the extent that it requires a surrender of the bonds to the city, and a termination of the trust. In that way the issue is squarely presented of whether the facts so alleged and proven are sufficient to authorize a decree of a court of equity

to terminate the trust and surrender the property to the city.

Assuming for the present that the funds placed in trust were owned by the settlors to the extent that they had the power to create the situation manifested by the instrument and now merely seeking to interpret the instrument, it is clear that its effect is to set up a fund to be held in being by a trustee for a definite period, subject to the right of the City Board of Education and city council, who are the settlors, to determine within that period whether the fund shall be irrevocably devoted to public school purposes, which is a charitable use. 10 Amer.Jur. 632, section 65; 11 Corpus Juris 316, section 20.

The terms of the instrument are specific, and reserve only one power to be exercised in that period. It does not provide an alternative course, if they decide not to use it for public school purposes. In that event the only power they have is to leave the fund in trust to the end of the period. So that if the instrument is to be given effect and its purpose carried out, no one can take the money out of trust and devote it to any purpose but for the schools. So long as that instrument is the source of the power of the parties those two agencies cannot at any given time decide not to devote the fund to school purposes with the effect of preventing their successors in office, or even the same persons filling the offices, from deciding at a subsequent time within that period that the fund should be used for the public schools. Analogy may be found in Willett & Willett v. Calhoun County, 217 Ala. 687, 117 So. 311; 43 Corpus Juris 211; 44 Corpus Juris 73, and clearly differentiated from Corning v. Patton, Ala.Sup., 182 So. 39;[1] Tate v. School District, 324 Mo. 477, 23 S.W.2d 1013, 70 A.L.R. 771.

But it is our understanding that the main contention is that at any time the settlor, trustee and beneficiaries, if they all have full capacity to contract, may at any time by contract terminate the trust and restore the fund to the settlors. This seems to be the rule, and is the result of the ordinary power to contract. 26 R.C.L. 1211; 65 Corpus Juris 353, 354.

But this right does not exist in its essence when to terminate deprives the true beneficiaries of the benefit of the trust without their consent, and when their representatives are limited in their power to act for them by the very terms of the instrument itself.

School boards and city councils do not possess unlimited power to contract. City school boards are themselves subject to the revisory power of the State Board. School Code, section 35.

The instrument reserves no right to revoke. It is specific that thereby the two agencies agree that they may exercise only one right to contract or to act with respect to that fund within that period. The school interests are the beneficiaries. While the school board has a certain power to contract for those interests, they have abdicated that power here to a certain extent. Nine years ago those agencies were of the considered opinion that within fifteen years no agency could use this fund but for one purpose. We will assume that the fund was subject to their power to contract in this respect. Today those agencies have a different opinion, but the right to exercise it has been cut off by their contract. They cannot abrogate a contract which they virtually contracted not to abrogate, when its effect is for a public charity, though they administer that charity. As representatives of that charity they became bound nine years ago not to do what they now think ought to be done. They are not therefore free to contract in that respect as one in possession of full legal capacity. The trust agreement cannot therefore be terminated merely by virtue of their power to contract.

So far we have undertaken to declare the effect of the instrument creating the trust, and the power of the parties to it to terminate it by contract, without considering the power of the city council and Board of Education to make an instrument of trust whose effect may be the ultimate removal of school funds from use for school purposes. Section 200, School Code, provides that all property acquired for school purposes shall be held in trust by the City Board of Education for the use of the public schools of the city. Section 201 that it shall have the right to acquire such real and personal property as may be needed.

This record does not show, so far as we have found, whether the school property sold to the state was owned by the city and by it simply permitted to be used for

---

[1] Ante, p. 354.

that purpose, or was owned by the City Board of Education which had a right to acquire it. The deed of trust recites that the property was purchased and owned by the City Board of Education, and the city for school purposes. If it was city property not held in express trust for the schools, they could perhaps consistently put the proceeds in another trust as here stipulated, with the ultimate result of it returning to the city if not used for the schools under the terms of the trust. But if it was property owned and held in express trust by the city or the City Board of Education, for school purposes, especially if a constitutional school tax was used in acquiring it, the power of such board under the agreement to divert the funds from such purpose if not so used as there provided, presents a question of a very serious sort, not here necessary to decide.

We think the fundamental error in the decree of the court is the holding that the parties have the legal right to agree to a termination of the trust.

We have here expressed a different conclusion, though personally they were sui juris. They are not acting personally but in a capacity in which their power to contract is limited by law, as well as by the terms of the agreement whose beneficiaries (see 56 Corpus Juris 470, note 29) have not consented and indeed cannot.

We therefore dissent from the views expressed in the majority opinion.

ANDERSON, C. J., and BROWN, J., concur.

### On Rehearing.

BOULDIN, Justice.

It was fitting that the complainant, seeking the advice of a court of equity touching its status as a trustee of public funds and the duties growing out of 'its position, should not take a partisan position, but present the facts and legal issues fully and fairly.

In this situation the court has deemed it proper to receive and consider as on rehearing a brief amicus curiae on behalf of citizens and tax payers opposed to the action of the governing authorities approved by the decree appealed from.

Upon further consideration, we repeat that this so called trust fund is a public fund derived not from diversion of public school properties from public school uses, but upon a transfer of title to the State

rather than a municipality for State uses and the operation of the State schools under a different management. It is now proposed to apply this fund to the satisfaction and retirement of school bonds issued under the former régime. The majority are of opinion that at the end of fifteen years this fund would be available for the purpose now proposed.

The present governing bodies have all the governing powers of the former bodies. The fund is a public fund in which public authorities represent the public interests. We adhere to the view that the present governing agencies have the same authority to determine when the new school arrangement has proven satisfactory as the former agencies—have the same powers over this fund as the former bodies.

Application overruled.

GARDNER, THOMAS, and KNIGHT, JJ., concur.

ANDERSON, C. J., and BROWN and FOSTER, JJ., dissent.

BROWN, J., expresses his views in separate opinion.

BROWN, Justice (dissenting).

It is my opinion that the case does not present a justiciable controversy within the meaning of the Declaratory Judgment Act, Gen.Acts 1935, p. 777, and that the Circuit Court was without jurisdiction to terminate the trust; that the appeal should be dismissed on the ground that the decree appealed from is void. Jefferson County v. Johnson, 232 Ala. 406, 168 So. 450; Upshaw v. Eubank et al., 227 Ala. 653, 151 So. 837; County Board of Education v. Borgen, 1934, 192 Minn. 512, 257 N.W. 92.

In Upshaw v. Eubank, supra, it was noted [page 838]: "The only brief filed is that for appellant, in which it is stated: 'The opinions expressed in this brief and argument are those of solicitor for the appellant. The lower court adopted these opinions as its own and based the final decree thereon.'" The appeal was dismissed, and it was observed: "It [the bill] merely seeks an advisory decree or opinion in respect to the respective interests of the parties, and the minor, Wileyna L. Upshaw, who, if the averments of the bill are true, has an interest in the property, is not a party to the proceeding."

In the Minnesota case, supra, the court used this language [page 94]: "Each ap-

646

pellant, contrary to what is customarily the case, seeks to sustain the judgment from which the appeal was taken. It will thus be seen that there is before us an appeal by parties who were not aggrieved by the decision below, and this court is urged by them to affirm what was there accomplished. Obviously, then, the case is one where each appellant is satisfied with what was accomplished in the lower court, and as such no other relief is here sought from the judgment appealed from except that the same be sustained. We are asked to approve what was done below by those who were the only adverse parties to this proceeding. No taxpayer has appeared, nor has the court required any taxpayer to be summoned or to appear in the case. * * *

"It necessarily follows from what has been stated that the instant case utterly lacks the essential element of controversy— that there is wholly lacking an adverse party. Any opinion that might be written could only be an advisory one. As such it would be without force. Such decision would not be res judicata.

"It appearing that there was no controversy in the court below any more than there has been here, it necessarily follows that the judgment appealed from must be reversed."

In appellants' brief in the case at bar we find this statement: "Being unwilling to rely upon the decision of the learned Chancellor without the confirmation of this Court, the bank as trustee, has appealed said decree, and appellees have consented for said appeal to be submitted without further notice to them in order that a final decree may be had at the earliest possible moment."

This, as is stated in brief amicus curiæ, is but a frank request for "an advisory opinion."

If the bill brings the case within the jurisdiction of the Circuit Court, its adjudication is entitled to full faith and credit, if it is without jurisdiction, the decree is subject to be annulled by a bill of review for error of law apparent, and affords the trustee no protection. Taylor et al. v. Crook, Adm'r, et al., 136 Ala. 354, 34 So. 905, 96 Am.St.Rep. 26.

I adhere to the view expressed by Justice FOSTER, that the trust cannot be terminated short of the period fixed by the trust agreement, except for re-establishment of a public school system.