Anthony T. LEE and Henry A. Lee, by Detroit Lee and Hattie M. Lee, their parents and next friends, et al., Plaintiffs,

United States of America, Plaintiff and Amicus Curiae,

v.

MACON COUNTY BOARD OF EDUCATION et al., Defendants.

Civ. A. No. 604–E.

United States District Court
M. D. Alabama, E. D.

July 13, 1964.

Fred D. Gray, Montgomery, Ala., Jack Greenberg, Charles H. Jones, Jr., Constance Baker Motley, and Norman Amaker, New York City, for plaintiffs Lee, et al.

Ben Hardeman, U. S. Atty., Montgomery, Ala., and St. John Barrett, Atty., Dept. of Justice, Washington, D. C., for United States.

Richmond M. Flowers, Atty. Gen., and Gordon Madison, Asst. Atty. Gen., Montgomery, Ala., Maury D. Smith (of Goodwyn & Smith), Marion Rushton (of Rushton, Stakely & Johnston), Sam Rice Baker (of Steiner, Crum & Baker), and Hill, Hill, Whiting & Harris, Montgomery, Ala., for defendants.

Before RIVES, Circuit Judge, and GROOMS and JOHNSON, District Judges.

PER CURIAM.

This case was originally filed in January of 1963. The plaintiffs, who are Negro children and their parents residing in Tuskegee, Macon County, Alabama, originally sought relief of the defendants the Macon County Board of Education, its individual members, and C. A. Pruitt as Superintendent of Education of Macon County. Jurisdiction was invoked pursuant to 28 U.S.C. § 1343 (3) and 42 U.S.C. § 1983. The suit was brought as a class action under Rule 23(a) (3), Federal Rules of Civil Procedure. The case as originally filed sought to have this Court enjoin the Board of Education of Macon County, Alabama, and the other named defendants from continuing a policy, practice, custom and usage of maintaining and operating a compulsory biracial school system in Macon County, Alabama, and assigning school children, including the plaintiffs, on the basis of their race. In addition and among other things, the plaintiffs ask this Court to make and enter the necessary orders assuring their constitutional right and the constitutional right of other members of their race and class to attend the public schools of Macon County, Alabama, without being discriminated against on account of their race or color. In July, 1963, plaintiffs filed a motion for a preliminary injunction against defendants' operation of a racially discriminatory school system and in the alternative renewed their request to have the defendants submit a desegregation plan. This Court at this stage of the proceeding determined that the public interest in the administration of justice and in preserving law and order and in protecting the authority and integrity of the lawfully constituted courts of the United States made it appropriate and necessary that the United States of America be designated to ap-

pear and participate as a party in all proceedings in this action before this Court.[1]

After hearing the testimony, the District Judge on August 13, 1963, granted the plaintiffs' motion for a preliminary injunction, and in a memorandum opinion filed August 22, 1963,[2] found and held that the action was a proper class action; that these plaintiffs were authorized to file and maintain the action; that the defendant Board operated a compulsory biracial school system; that all pupils, teachers and other school personnel were assigned solely on the basis of race or color; that the defendant Board was under a constitutional obligation to eliminate the compulsory biracial school system; and that the defendant Board's conduct violated plaintiffs' rights under the Fourteenth Amendment to the Constitution of the United States. The defendant County Board of Education was ordered to submit by December, 1963, a general plan for the desegregation of the Macon County public schools. The Board was also ordered to begin desegration in its county school system by September, 1963, through the nondiscriminatory use of the Alabama Placement Law. In compliance with the order of this Court, the Macon County Board of Education assigned 13 Negro pupils to previously "white" Tuskegee High School. On September 2, 1963, these Negro pupils were denied entrance to Tuskegee High School by Alabama State troopers acting pursuant to an Executive Order of Governor George C. Wallace declaring the school closed until September 9, 1963. This action by the Governor of the State of Alabama was without the knowledge or consent of the Macon County Board of Education. Subsequently and on September 9, 1963, State troopers again prevented entrance of the Negro pupils to Tuskegee High School; this action was also upon the order of Governor Wallace; whereupon the United States filed a motion for a temporary restraining order against the Governor, which this Court granted. This restraining order was subsequently enlarged into a preliminary injunction.[3] Among other things, the Court's order enjoined Governor Wallace from interfering with or obstructing the Macon County Board of Education in administering the operation of the Macon County school system in compliance with the order of this Court. In February of 1964, plaintiffs filed an amended and supplemental complaint, together with motions for a temporary restraining order and preliminary injunction. This complaint joined as defendants in the action the Alabama State Board of Education, the State Superintendent of Education and Governor George C. Wallace as President of the State Board of Education. The amended and supplemental complaint alleged, among other things, that the Alabama State Board of Education had asserted general control and supervision over all the public schools of the State and that their design, action and purpose in asserting this control was to continue operation of a racially segregated school system throughout the State of Alabama and particularly in Macon County, Alabama. In their motion for a preliminary injunction, the plaintiffs ask this Court to enjoin the Governor of Alabama, the defendant State Board of Education, and the individual members thereof, from continuing to operate a compulsory biracial school system in all

1. The authority for this action as set out in the order of the Court entered in this case on July, 1963, is Faubus v. United States, 254 F.2d 797 (8th Cir. 1958), cert. denied, 358 U.S. 829, 79 S.Ct. 49, 3 L.Ed. 2d 68; Bush, et al. v. Orleans Parish School Board, et al., D.C., 188 F.Supp. 916, aff'd 365 U.S. 569, 81 S.Ct. 754, 5 L. Ed.2d 806; Bush, et al. v. Orleans Parish School Board, et al., D.C., 190 F.Supp. 861, aff'd 366 U.S. 212, 81 S.Ct. 1091, 6 L.Ed.2d 239; United States v. Barnett, 330 F.2d 369 (5th Cir.) and United States v. Barnett, 376 U.S. 681, 84 S.Ct. 984, 12 L.Ed.2d 23 (April 6, 1964).

2. Lee v. Macon County Board of Education, D.C., 221 F.Supp. 297.

3. United States v. Wallace, D.C., 222 F. Supp. 485.

the counties in the State of Alabama, including Macon County, and, in the alternative, request the Court to require a plan for the complete reorganization of the public school system in the State of Alabama on a nonracial basis. In addition, the plaintiffs seek to enjoin further enforcement by the defendants of Title 52, Code of Alabama, Sections 61(13–19) and 61(20–21) and any other statute permitting the use of public funds for the maintenance of "private," segregated schools where the effect and purpose is to circumvent the orders of this or any other Federal court. They also seek to enjoin the enforcement of certain State Board of Education resolutions directing the payment of public funds as tuition grants for pupils to attend private schools and to enjoin the defendants from closing public schools in Macon County, Alabama, or elsewhere in the State. In February, 1964, this Court ordered the temporary restraining order issued, and continued the same in effect pending a hearing on plaintiffs' motion for a preliminary injunction. At this stage of the proceeding, the Chief Judge of the United States Court of Appeals for the Fifth Circuit, in response to a request of the District Judge, filed with the Clerk of this Court his order designating a three-judge court in this case, said designation being pursuant to the provisions of Title 28, Section 2284, United States Code. This three-judge District Court immediately issued an order continuing in force and effect the temporary restraining order issued by the District Judge until a hearing and determination by the three-judge court upon plaintiffs' motion for a preliminary injunction. The matter was set and heard; at the conclusion of the hearing, the Court requested that written briefs be filed by all parties and that the briefs specifically address themselves to six questions as framed by the Court. These questions were as follows:

"1. Should the present temporary restraining order be enlarged into a preliminary injunction? In what way, if any, should the preliminary injunction differ from the present restraining order?

"2. Should this Court declare unconstitutional the Alabama statutes relating to grants-in-aid, or, in the alternative, should this Court declare the use of grants-in-aid unconstitutional in the application where such use is designed to perpetuate and has the effect of perpetuating the segregation of the races in the public school systems in the State of Alabama, and, if so, should such use be enjoined?

"3. Whether the Governor, the State Superintendent of Education and the State Board of Education, and its members, should be enjoined from interfering with the County and City Boards of Education in the desegregation of the schools throughout the State.

"4. Whether under the evidence an order should issue desegregating all of the public schools of the State at the elementary and secondary level based upon the assumption or usurpation of authority by the Governor, the State Superintendent of Education, and the State Board of Education and its members.

"5. Whether or not under the evidence in this case the use of public funds, public interference and public services has been to such an extent that the Macon Academy should be made a party and given the opportunity to be heard on the question of whether it has become a public institution and a part of the Alabama public school system.

"6. Whether or not under the evidence in this case this Court should declare the Alabama Placement Law unconstitutional in its application."

As stated above, acting pursuant to this Court's order, the defendant Macon County Board of Education assigned 13 Negro pupils to the Tuskegee Public High School. These pupils were assigned in grades eight through twelve and were

scheduled to begin school on September 2, 1963. Early on the morning of September 2, an Alabama State trooper visited the home of Macon County Superintendent Pruitt and presented him with an order of Governor George C. Wallace, who is also under the law of Alabama the ex officio President of the Alabama State Board of Education. This Executive Order stated, in part, as follows:

"WHEREAS, there now exist in the State of Alabama conditions calculated to result in a disruption of the peace and tranquility of this State and to occasion peril to the lives and property of the citizens thereof, this situation resulting from the threat of forced and unwarranted integration of the public schools of this State; and,"

\* \* \* \* \* \*

"NOW, THEREFORE, I, George C. Wallace, as Governor of the State of Alabama, and in conformity with the Constitutional and statutory power vested in me as Governor of said State, do hereby order and direct the Macon County Board of Education, Macon County, Alabama, to delay the opening of Tuskegee High School for a period of one week, until, to-wit: Monday, September 9, 1963, with the sole and express purpose of allowing the Governor of the State of Alabama to preserve the peace, maintain domestic tranquility and to protect the lives and property of all citizens of the State of Alabama.

"DONE this the 2nd day of September, A.D., 1963.

/s/ George C. Wallace

GEORGE C. WALLACE, AS GOVERNOR OF THE STATE OF ALABAMA"

Acting upon this direction of Governor Wallace, the State troopers surrounded the Tuskegee High School, and neither the pupils nor teachers were permitted to enter the school. Tuskegee High School remained closed for one week. On September 9, 1963, Governor Wallace issued another Executive Order, which stated, in part:

"NOW, THEREFORE, I, George C. Wallace, as Governor of the State of Alabama, and in conformity with the Constitutional and statutory power vested in me as Governor of said State, do hereby order and direct that no student shall be permitted to integrate the public schools of the City of Tuskegee, Alabama."

State troopers continued to surround the school and block the entrance of the Negro pupils. The white students, however, were permitted to enter the school on September 9. Prior to the interference by the Governor of the State of Alabama as related above, approximately 250 white pupils had been preregistered to attend Tuskegee High School commencing September, 1963. After the delay occasioned by the first Executive Order of the Governor and on September 9, only 35 white pupils attended. By September 12 every white pupil had withdrawn from the school. Of the original 250 registered to attend Tuskegee High School, approximately 100 transferred to Shorter High School and 40 to 50 transferred to Macon County High School in Notasulga. Both Shorter and Notasulga high schools are a part of the Macon County school system. The remainder of the students went to a "private" institution that has been set up in Tuskegee and named Macon Academy; this school has been limited to white pupils. Governor Wallace announced publicly that the State Legislature had provided for grants-in-aid to private schools and assured the organizers of the Macon Academy that the Macon County Board of Education would cooperate in making grants-in-aid available through the use of its statutory authority to provide such aid to students in lieu of operating a particular public school. On September 17, 1963, the State Board of Education passed a resolution directing "that the Macon County Board of Education comply with the State law with reference

to public hearings in closing the schools under its jurisdiction." Meanwhile the Macon County Board of Education complied with the State Board's directive to provide transportation for students who had transferred from Tuskegee High School to Shorter and Notasulga High Schools. Moreover, some teachers were transferred from Tuskegee High School to Shorter and Notasulga schools, and the Vocational Department of the State Board of Education transferred the Vocational Agriculture teacher from Tuskegee High School to a school outside Macon County. In October, 1963, Governor Wallace started a drive among State employees to raise funds for "private school foundations" and asked his cabinet members to contribute and solicit donations from employees in their departments. The treasurer of the Macon Academy testified that the institution received its pro rata share of these funds. After the District Judge ordered the Macon County Board to cease transportation of white students from the Tuskegee area to the high schools in Shorter and Notasulga, students were, at the direction of the Governor, transported in State patrol cars and in a school bus previously used by a State public vocational school.

In January, 1964, the Alabama State Board of Education passed the following resolution:

"BE IT RESOLVED That the State Board of Education hereby orders that Tuskegee High School be closed, all grades above the seventh grade, and that the teachers be transferred to other schools in the Macon County School System and the children transferred to other schools in the Tuskegee area, in accordance with the State Board of Education policy of closing schools where the teacher load is not sufficient to justify paying teachers, and in accordance with Title 52, Code of Alabama, 1940, as amended; and

"BE IT FURTHER RESOLVED That the Alabama State Board of Education hereby orders the Macon County Board of Education to provide school bus transportation for the children attending the Shorter and Notasulga schools in Macon County."

On the same date, this resolution was wired by the State Superintendent of Education to the Macon County Superintendent of Education. In the same session, the State Board directed the Governor to take whatever steps were necessary to execute its directive to close the Tuskegee Public High School above grade seven. In compliance with the directive of the State Board, the County Board of Education closed the Tuskegee High School effective February 3, 1964, and directed that all students then attending Tuskegee High School (12 Negro and no white students) be transferred to other schools in the "Tuskegee area." The County Board of Education further directed that the teachers of the Tuskegee High School be assigned to such other schools in the county as might be designated. The effect of the State Board's resolution facilitated the transportation of white children to the "all white" Shorter and Notasulga schools and by limiting the Negro pupils to "other schools in the Tuskegee area," required them to return to the "all Negro" Tuskegee Institute High School in Tuskegee, Alabama. When on February 3, 1964, the Negro pupils were barred from the Tuskegee High School, this Court upon proper motion, issued a temporary restraining order, the effect of which did not require the reopening of the Tuskegee High School for the 12 Negro pupils, but ordered these Negro pupils admitted to Shorter and Notasulga on the same basis as the white pupils who were transferred from the Tuskegee High School when the Negro pupils first attended in September, 1963.

In February, 1964, the State Board of Education adopted other resolutions directing the Macon County Board to pro-

vide financial assistance under the grant-in-aid law:[4]

"BE IT RESOLVED That the Macon County Board of Education is directed to forthwith, February 4, 1964, provide financial assistance to parents or guardians of students under the grant-in-aid law of the State of Alabama as set forth in Title 52, of the 1940 Code of Alabama, as amended."

"BE IT RESOLVED That the State Board of Education deplores the order of Judge Johnson and pledges every resource at our command to defend the people of our State against every order of the Federal courts in attempting to integrate the public schools of this State and will use every legal means at our command to defeat said integration orders and pledges our full support to the local boards of education in supporting the public school system as now constituted with the law, and will give every assistance possible to support every effort to maintain our way of life and high educational standards for all citizens of our State."

Acting pursuant to the District Court's order of February 3, 1964, the 12 Negro pupils attempted to enroll at Shorter and Notasulga High Schools on February 5. However, the Mayor of Notasulga, James Rea, prevented the entrance of 6 Negro pupils to the Notasulga school, claiming that their attendance would create a fire hazard.[5] After the interference by the Notasulga Mayor and upon enrollment of the Negro pupils, all white pupils withdrew. The white pupils likewise withdrew from the high school in Shorter. The two high schools remained open until the close of the school year, with 6 pupils—all Negroes—attending each school.

In February, 1964, and shortly prior to the hearing in this case, employees of the Alabama State Department of Education were dispatched to the Macon Academy to discuss accreditation of the school. Forms of accreditation were left at the academy and a cursory inspection of the premises was conducted. Though, admittedly, the school did not conform to accreditation standards in several respects, a letter was sent on February 12, 1964, by the State Superintendent of Education to the Headmaster of Macon Academy stating that accreditation had been granted "effective this date * * * for the 1963–64 school session."

The Governor on February 10, 1964, requested the Justices of the Alabama Supreme Court to render an advisory opinion concerning whether the Alabama law authorized the action taken by the State Board of Education as related above. On February 18, 1964, the Justices replied that no law in Alabama authorized the State Board to do any of the above acts and that such power was vested solely in local boards.

All these issues were heard by this Court on February 21–22, 1964.

Subsequent to the hearing and on February 29, 1964, the Macon County Board of Education submitted a desegregation plan pursuant to an earlier order of this Court, the plan providing for the desegregation of the twelfth grade commencing September, 1964. The plan further provides that applications for transfer

---

4. Alabama's grant-in-aid system appears to have been first proposed by the Special Interim Committee of the Alabama Legislature in 1954. The legislative history of the statute subsequently enacted by the Alabama Legislature reflects that this Committee was formed to consider means of meeting the decision of the Supreme Court in Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954). The Committee's report to the Legislature set forth a number of proposals for delaying or avoiding racial desegregation in education, and it proposed a number of specific amendments to the Alabama Constitution, all of which were ultimately adopted. These grant-in-aid laws are all set out in Title 52, Code of Alabama, recompiled 1958.

5. The memorandum opinion of this Court setting out the findings, conclusions and injunction order is reported in United States v. Rea, D.C., 231 F.Supp. 772.

or assignment are to be considered and processed under the Alabama Placement Law. The plan makes no provision for the desegregation of teachers or other school personnel.

■ Under the evidence in this case, there is no question that the State of Alabama has an official policy favoring racial segregation in public education. In his Executive Orders of September 2 and 9, 1963, directed to the Macon County Board of Education, Governor Wallace referred to the "unwarranted integration" being forced by the Federal court. In his Executive Order of September 9, the Governor further said that the threat of integration "is detrimental to the public interest" and that the "integration of the public schools will totally disrupt and effectively destroy the educational process." This is particularly significant in this case in that Governor Wallace is, as stated above, the ex officio President of the State Board of Education. Alabama Code, Title 52, Section 7. Further evidence clearly reflecting this official policy is found in one of the State Board of Education's resolutions of February 4, 1964, wherein it was unanimously declared that the State Board would "defend the people of our State against every order of the Federal courts in attempting to integrate the public schools of this State and will use every legal means at our command to defeat said integration orders and pledges our full support to the local boards of education in supporting the public school systems as now constituted * * *." [6] Further evidence of this official policy is reflected by a speech delivered on March 15, 1963, to the Alabama Education Association by the State Superintendent of Education where it was stated, "We stand a chance to lose millions of dollars in federal aid for defense connected pupils because there is no Judas Iscariot among us who will sell our racial integrity for the proverbial thirty pieces of silver." A similar statement made in December, 1963,

for public release by the State Superintendent of Education was to the effect that "Teachers, administrators and parents have firmly held the line for our way-of-life and in opposition to misguided parents who have tried to force the entry of their children into schools for a different race * * *." These public statements in the form of news releases are regularly circulated from the office of the State Superintendent of Education to the various local superintendents of schools throughout Alabama.

Strictly in accord with this official policy, the State of Alabama has operated and presently operates a dual school system based upn race. The annual report of the State Department of Education setting forth statistical and financial data for the 1961–62 school year clearly shows this maintenance of a dual school system based upon race. There are different allocations of expenditures between "white" and "Negro" schools; separate statistics by race are kept for school enrollment; transportational facilities are separate; there are different types of schools; financial payments are kept separate, and school expenditures are completely separated. School census figures by county and city are also tabulated separately for "white" and "Negro." The same is true for professional personnel of the local school systems. The annual report repeatedly refers to "Negro schools" and "white schools." The various forms prepared and distributed by the State Department of Education for use by the city and county school boards throughout the State of Alabama similarly provide for the racial designation of schools, students, teachers and equipment. The annual reports that are submitted by the various local boards to the State Board of Education require separate statistical data for "white" and "Negro" schools.

The evidence in this case is clear that over the years the State Board of Education and the State Superintendent of Education have established and en-

---

6. For a further discussion of this official policy, see Shuttlesworth v. Birmingham Board of Education, D.C., 162 F.Supp. 372, 379–381.

forced rules and policies regarding the manner in which the city and county school systems exercise their responsibilities under State law. This control relates, among other things, to finances, accounting practices, textbooks, transportation, school construction, and even Bible reading. The control by the State Board of Education over the local school systems is effected and rigidly maintained through control of the finances. For example, the Macon County School Board received $954,533 in State revenues for the 1961–62 school year, while spending a total of $53,541 in county revenues and $18,200 in other local revenues for the same school year. The annual report of the State Board of Education further reflects that the other counties in Alabama heavily rely upon State financing for the operation of their school systems. The allocation of State "minimum program" funds, which comprise a major part of the State contribution, is according to "teacher units" in each local school system. The State Board of Education has considerable discretion in the manner of allocating these teacher units. The State Board of Education through its various officials and members has exercised similar control over local school construction and local school bus transportation. The extent to which this control is exercised is reflected in the State Board's action taken shortly after the decision of the United States Supreme Court in Abington School District v. Schempp, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844, which decision was rendered June 17, 1963. The Alabama State Superintendent of Education recommended that the State Board pass a resolution requiring that in all schools supported in whole or in part by public funds there should be a daily reading from the Holy Bible. This resolution was adopted by the State Board and presumably is presently adhered to throughout the State of Alabama by the local school authorities. In addition, the State Board and State Superintendent have exercised very specific control over the enrollment and placing of students in schools receiving Federal aid from the Federal Government under the Impacted Area Program (Public Laws 81–815 and 81–874 as amended by Public Law 85–620).

As related above, the temporary restraining order issued by this Court on February 3, 1964, and extended by the full Court of three judges on February 7, 1964, required the Macon County Board of Education to transfer six of the Negro students to Macon County High School at Notasulga and the other six Negro students to Shorter High School. The order further restrained the Alabama State Board of Education from interfering with or obstructing the Macon County Board of Education in carrying out the orders of the District Court. However, since only the 12 Negro children are presently attending the Shorter and Notasulga High Schools,[7] it is no longer appropriate for this Court to limit the ordinary administrative discretion of the Macon County School Board by requiring the continued enrollment of those children in those particular schools. However, it would defeat the prior orders of this Court and would be a denial of the right of the children, to permit the Macon County Board to retransfer them to the "all Negro" school from which they were originally transferred. The boycotting of the public schools of Macon County by the white students has been encouraged and made possible by the conduct of the State of Alabama acting through its officials and agents; these include the Governor, the State Superintendent of Education, the State Board of Education and the individual members thereof, the Mayor of Notasulga and others. United States v. Wallace, supra, and United States v. Rea, supra. This Court concludes, therefore, that the present temporary restraining order, with certain modifications, should be enlarged into a preliminary injunction. The evi-

7. This Court is informed that three or more of these students were graduated this spring from the Macon County High School at Notasulga, Alabama.

dence in this case clearly reflects that the Macon County School Board and the individual members thereof, and the Macon County Superintendent of Education, have, throughout this troublesome litigation, fully and completely attempted to discharge their obligations as public officials and their oaths of office. It is no answer, however, that these Macon County officials may have been blameless with respect to the situation that has been created in the school system in Macon County, Alabama. The Fourteenth Amendment and the prior orders of this Court were directed against action of the State of Alabama; not only the action of county school officials, but the action of all the other officials whose conduct bears on this case is "state action." In this connection, see Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5, 19 (1958), where the Supreme Court of the United States, among other things, discussed the contention advanced by the Little Rock, Arkansas, school officials that they were to be excused from carrying out the prior orders of the Court by reason of conditions of tension and disorder caused by the action of the Governor and the State Legislature. The Supreme Court, in rejecting this contention, stated:

"The constitutional rights of respondents are not to be sacrificed or yielded to the violence and disorder which have followed upon the actions of the Governor and Legislature. As this Court said some 41 years ago in a unanimous opinion in a case involving another aspect of racial segregation: 'It is urged that this proposed segregation will promote the public peace by preventing race conflicts. Desirable as this is, and important as is the preservation of the public peace, this aim cannot be accomplished by laws or ordinances which deny rights created or protected by the federal Constitution.' Buchanan v. Warley, 245 U.S. 60, 81, 38 S.Ct. 16, 20, 62 L.Ed. 149. Thus law and order are not here to be preserved by depriving the Negro children of their constitutional rights."

This Court will not sanction the conditions that have been created in this case, particularly by the Governor, the State Superintendent of Education and the members of the State Board of Education, to be used as an excuse for returning the Negro plaintiffs to the school which the defendant county officials have heretofore operated and are now operating as a racially segregated school for children of the Negro race. It may, however, be appropriate for the Macon County Board of Education to reopen the Tuskegee High School (and this Court would not forbid such reopening) commencing at the beginning of the 1964–65 school year—provided the operation of that high school is in strict accordance with the orders of this Court heretofore entered and as those orders may be modified and amended by this Court.

The plan filed wlith this Court on February 28, 1964, by the Macon County Board of Education, wherein it is proposed to process transfer applications for the 1964–65 school year only with respect to students in the twelfth grade, is completely unacceptable. This proposal is not a step forward; it is a step backward. This Court has already approved the transfer of Negro students to the ninth, tenth, eleventh and twelfth grades in that school. At the present time it is recognized that there are no white children who attend those high school grades. The reopening and operation of the Tuskegee High School or the continued operation of the Notasulga and Shorter High Schools for the 1964–65 school year and any subsequent years must be in a manner designed to eliminate further racial discrimination in the Macon County school system. Specifically, if considered advisable by the Macon County Board of Education, the reopening of the Tuskegee High School will necessitate the transfer of the white students that was approved by the Board of Education to the Notasulga and Shorter schools, back to the Tuskegee High

School. Not only is the plan as presently proposed by the Macon County Board of Education unacceptable, but the plan that must ultimately be adopted and put into effect for the 1964–65 school year must provide some additional affirmative steps for the elimination of racial discrimination in the school system—including at least one grade in the elementary schools. Anything short of this would not meet the test of "all deliberate speed" first announced in Brown v. Board of Education, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (1955), and more recently referred to in Watson v. City of Memphis, 373 U.S. 526, 83 S.Ct. 1314, 10 L.Ed.2d 529 (1963); Goss v. Board of Education of City of Knoxville, 373 U.S. 683, 83 S.Ct. 1405, 10 L.Ed.2d 632 (1963); Calhoun, et al. v. Latimer, et al., 84 S.Ct. 1235; and Griffin, etc., et al. v. County School Board of Prince Edward County, et al., 84 S.Ct. 1226. The Supreme Court in the Prince Edward County case stated:

> "There has been entirely too much deliberation and not enough speed in enforcing the constitutional rights which we held in Brown v. Board of Education, supra, had been denied Prince Edward County Negro children."

In this connection, see the Fifth Circuit Court of Appeals' opinion in Armstrong, etc., et al. v. The Board of Education of the City of Birmingham, Jefferson County, Alabama, 333 F.2d 47, wherein the Court stated:

> "Plans providing for the integration of only one grade a year are now rare; and the possibility of judicial approval of such a grade-a-year plan has become increasingly remote due to the passage of time since the Brown decisions. * * * The 12th grade of the Birmingham School System was desegregated as ordered by the Court, using the Alabama Pupil Placement Law, during the year 1963. Commencing with the opening of school in September of 1964, this plan must be expanded to include the 10th and 11th grades in

addition to the 12th grade. Commencing with the opening of school in September of 1965, the plan must be applied to the 9th grade and continue thereafter with one grade a year until the plan applies to the 8th and 7th grades, thus making it applicable to all high school grades. The plan will be applied to one grade per year in the elementary schools, commencing with the 1st grade in September, 1964, and shall continue thereafter at the rate of one additional grade per year in the elementary schools until the plan is applied to all elementary school grades. The dual or bi-racial school attendance system, that is, any separate attendance areas, districts or zones, shall be abolished as to each grade to which the plan is applied and at the time of the application thereof to such grades, and thereafter to additional grades as the plan progresses."

See also the Court's opinion in Stell, et al. v. Savannah-Chatham County Board of Education, et al., etc., 5 Cir., 333 F.2d 55.

Inasmuch as no hearing has yet been held upon the proposed plan filed by the Macon County Board and the objections thereto, it is premature for this Court to direct what specific steps should be taken commencing with the 1964–65 school year to implement further the desegregation of the Macon County schools. However, the Macon County School Board is directed, and will be formally ordered in the decree of this Court, to present to this Court on or before August 3, 1964, a more complete and realistic plan that will conform to what this Court has stated in this opinion. Furthermore, since the evidence as herein related clearly establishes a persistent course of action by the defendant State officials to interfere with and prevent the carrying out of this Court's order respecting the desegregation of the Macon County public schools, and since these State officials have in this interference acted wilfully, the plaintiffs in this case

are entitled to an extension and enlargement of the injunction so as to include these State officials. Bush v. Orleans Parish School Board, D.C., 188 F.Supp. 916, aff'd 365 U.S. 569, 81 S.Ct. 754, 5 L.Ed.2d 806; United States v. Wallace, D.C., 218 F.Supp. 290; Faubus v. United States, 8 Cir., 254 F.2d 797; United States v. State of Mississippi, 328 F.2d 586 (5th Cir. 1962).

■ Since the evidence in this case is clear that Governor Wallace has acted in this unlawful interference both in his capacity as Governor and as ex officio President of the State Board of Education, the plaintiffs may, upon proper motion, be entitled to have injunctive relief run to both capacities. For the time being, however, the order as to Governor Wallace will run only as to his capacity as ex officio President of the Alabama State Board of Education, since he has been sued only in that capacity. The announced decision by the defendants Governor Wallace as ex officio President of the State Board of Education and the other members of the State Board of Education that they will cease their interfering action in the operation of the school system in Macon County and in other counties and cities throughout the State of Alabama, does not deprive these plaintiffs of their right to injunctive relief inasmuch as the defendants could return to their ways of illegal interference if such relief were not granted. United States v. W. T. Grant Co., 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303, and Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821.

■■ As to that aspect of this case relating to grant-in-aid payments by the State of Alabama for the education of students in racially segregated schools, this Court is of the firm conclusion that such payments would be unconstitutional where they are designed to further or have the effect of furthering said segregation in the public schools. The grants are to be made under the law of Alabama only when public education is "unavailable." It is now clearly settled that once the State undertakes the func-tion of providing public education to its citizens it cannot arbitrarily deny such education to citizens in one area of the State while continuing to make public education available to citizens in the other areas. The most recent pronouncement of this proposition was on May 25, 1964, by the Supreme Court in Griffin, etc., et al. v. County School Board of Prince Edward County, et al., supra. Therefore, as long as the State of Alabama maintains a public school system it cannot make public education "unavailable" for a class of citizens as was here attempted by the defendant State Board of Education and Governor, while making public education available to a different class of citizens in other areas of the county and State. However, this Court is not at this time willing to declare that the grant-in-aid statutes of Alabama are unconstitutional on their face. This is true for the reason that it is conceivable that the State of Alabama may choose to employ "private" schools as its instrument of discharging its obligation to provide education in lieu of its public school system. Needless to say, if that occurs the "private" schools that are made available must be available to the citizens of the State of Alabama without discrimination on account of their race or color. Terry v. Adams, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152; Marsh v. State of Alabama, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265; Simkins v. Moses H. Cone Memorial Hospital, 4 Cir., 323 F.2d 959, and the recently decided case of Griffin v. County School Board of Prince Edward County, supra. For these reasons this Court concludes that the use of the grant-in-aid statutes by the State of Alabama, through the payment of tuition grants for students enrolled in schools that discriminate upon the basis of race or color is unconstitutional. The use of such statutes for this purpose in Macon County and anywhere else in the State of Alabama will be enjoined by this Court.

■ Proceeding now to the question concerning whether the State Superintendent of Education and the State

Board of Education and its members, including Governor Wallace as ex officio President, should be enjoined from interfering with the county and city boards of education in the desegregation of the schools throughout the State of Alabama, this Court specifically finds and concludes that the purpose of the said State officials, as evidenced by their actions already recited, was clearly to prevent or impede any desegregation through their unlawful interference with the city and county school boards' attempting to comply with the law. Inasmuch as this purpose and intent has been demonstrated by these State of Alabama officials, the order of this Court will enjoin said defendants from interfering with court-ordered desegregation anywhere in the State of Alabama. The defendants' contention that these plaintiffs have no right to seek relief on a statewide basis is without merit. Bush v. Orleans Parish School Board, D.C., 190 F.Supp. 861; Potts v. Flax, 5 Cir., 313 F.2d 284. Furthermore, when considering the interest of the plaintiff the United States, that interest being to represent the public interest in the due administration of justice in the Federal courts, the contention of the defendants that relief must be restricted only to these Negro plaintiffs borders on the frivolous. United States v. State of Louisiana, D.C., 188 F.Supp. 916, stay den. 364 U.S. 500, 81 S.Ct. 260, 5 L.Ed. 2d 245, aff'd sub nom. 365 U.S. 569, 81 S.Ct. 754, 5 L.Ed.2d 806.

█ The question of whether, under the evidence in this case, this Court should order desegregation in all the public schools of the State of Alabama at the elementary and secondary level based upon the assumption or usurpation of authority by the Governor, the State Superintendent of Education and the State Board of Education and its members has given this Court considerable concern. There is no question that in the attempt by the Macon County Board of Education to comply with the orders of this Court, the Governor, the State Board and the State Superintendent of Education and the individual members thereof, have demonstrated that they have considerable authority and power over the actual operation of the local school systems. This is true irrespective of any supposed limitations on that power as set out in the Alabama law. The Governor and the State Board directed that the Tuskegee High School be closed; they directed that white students who had formerly attended the Tuskegee High School be transported from Tuskegee to Shorter and Notasulga; and they directed that teachers be transferred to accommodate the transferring students. In each instance the local board in Macon County was forced to comply with the directives of the Governor, the State Board of Education, and the State Superintendent of Education. Thus, these defendants have, through such actions, actively participated in the perpetuation of a segregated school system in Macon County, Alabama. The admission on the part of these defendants that their action was an abuse of their authority and their present reliance on the advisory opinions of the Alabama Supreme Court of February 18, 1964, to the effect that they had no such authority to close the schools and will not "do it again," places them in an extremely weak position. This Court recognizes the authority of the Supreme Court of Alabama when it interprets the Alabama law, as it informally did in these advisory opinions. This Court trusts that the Governor, the State Superintendent of Education and the other members of the State Board of Education will in their future conduct recognize that by their interference with the Macon County school board they have violated not only the Federal law, but the laws of the State of Alabama as well. However, a present recognition of their past illegal activity will not—in this case—justify this Court's failure to take appropriate action now. The Supreme Court of the United States has long since held that a state officer who has abused his authority by denying due process or equal

protection of the laws cannot escape responsibility by urging that his action was not authorized by the laws of the state and was therefore not "state action" within the meaning of the Fourteenth Amendment. Ex parte Virginia, 100 U.S. 339, 25 L.Ed. 676. Furthermore, as pointed out above, there is no question that the State Board of Education of Alabama has general control and supervision over the public schools of this State. As to the State Board's general control and power, see Board of Education of Blount County v. Phillips, 264 Ala. 603, 89 So.2d 96; Keller v. State Board of Education of Alabama, 236 Ala. 400, 183 So. 268, and First Nat. Bank of Anniston v. City of Jacksonville, 236 Ala. 639, 184 So. 338. However, in this case, *at this particular time,* this Court will not order desegregation in all the public schools of the State of Alabama. For the present time, this Court will proceed upon the assumption that the Governor, the State Superintendent of Education, and the State Board of Education will comply in good faith with the injunction of this Court prohibiting such interference with the local city and county school boards, and, through the exercise of considerable judicial restraint, no statewide desegregation will be ordered at this time. This Court will, however, retain jurisdiction of this and the other matters now presented in this case, and if such interference on the part of the Governor, the State Superintendent of Education, and the State Board of Education continues or occurs in the future—either directly or indirectly—through the use of subtle coercion or outright interference when the local school authorities are attempting to comply with the desegregation orders of a Federal court, it will be appropriate for the Court to reappraise that aspect of this case. United States v. W. T. Grant Co., supra.

 In this connection, there must be a recognition on the part of these State officials that in the exercise of their general control and supervision over all the public schools in the State of Alabama and particularly in the allocation and distribution of State funds for school operations, they have an affirmative duty to proceed with "deliberate speed" in bringing about the elimination of racial discrimination in the public schools of this State. The Supreme Court of the United States in Cooper v. Aaron, supra, made this clear when it stated:

> "State authorities were thus duty bound to devote every effort toward initiating desegregation and bringing about the elimination of racial discrimination in the public school system."

See also Brown v. Board of Education, supra. This Court, under the evidence in this case, could and possibly should now order the State of Alabama Board of Education to cease the illegal and unconstitutional practice of distributing public funds for the purpose of operating segregated schools. As to this point, the Supreme Court said in Cooper v. Aaron, supra:

> "State support of segregated schools through any arrangement, management, funds, or property cannot be squared with the [Fourteenth] Amendment's command that no State shall deny to any person within its jurisdiction the equal protection of the laws."

See also Board of Public Instruction of Duval County, Fla. v. Braxton, 326 F. 2d 616 (5th Cir.), cert. denied (May 1964), 84 S.Ct. 1223. However, this Court will not at the present time enjoin the State Superintendent of Education and the State Board of Education from such allocation and distribution of funds. Needless to say, it is only a question of time until such illegal and unconstitutional support of segregated school systems must cease. These State officials and the local school officials are now put on notice that within a reasonable time this Court will expect and require such support to cease. These school officials should now proceed to formulate and place into effect plans designed to make the distribution of

public funds to the various schools throughout the State of Alabama only to those schools and school systems that have proceeded with "deliberate speed" in the desegregation of their schools and school systems as required by Brown v. Board of Education, supra.

As to the Macon Academy, the evidence in this case strongly indicates that there has been on the part of the Governor, the State Superintendent of Education, and other State officials, public interference and public support and services to such an extent that that institution should be made a party and given an opportunity to be heard on the question of whether it has become a public institution and therefore a part of the Alabama public school system. If that is the case, then for the reasons already stated, there should be no question that the Macon Academy in Tuskegee, Alabama, is prohibited by the terms of the Fourteenth Amendment from discriminating in its admissions policy and should be enjoined against such action. Since the Macon Academy was not brought in as a proper party in this action when the evidence was taken upon this present submission, this Court will not at this time presume to express any view on the question of whether that institution has become a part of the public school system. It is clear, however, that that organization should be added as a defendant in order that it may be heard upon this issue.

We proceed now to the final question upon this submission: whether or not under the evidence in this case this Court should declare the Alabama School Placement Law unconstitutional in its application. This Court's order of August 22, 1963, directed that the Macon County Board of Education and the Macon County Superintendent of Education start desegregation of the county's public schools in September, 1963, "through the use of the Alabama School Placement Law, without discrimination on the basis of race or color." After this order, approximately 50 Negro pupils between grades eight and twelve applied to be transferred to the Tuskegee High School, formerly an "all white" school. As part of this transfer procedure under the Placement Law, these pupils were given several tests, including the California Standard Test and the Otis Quick Scoring Test. After these and other examinations, 13 of the applicants were granted transfers by the Macon County School Board and thereafter enrolled in Tuskegee High School. As stated above in this opinion, when these Negro pupils enrolled at Tuskegee High School in September, 1963, the white students at that school withdrew; approximately 100 of these white students were by authority of the county board transferred to the high schools at Notasulga and Shorter. These white students were not required to submit to examinations or tests in order to transfer. It is clear, therefore, that the Macon County School Board has used the Alabama School Placement Law only with respect to the applications of Negro students seeking to enter "white" schools. Such a use of the Placement Law is clearly illegal. Mannings v. Board of Public Instruction, 5 Cir., 277 F.2d 370; Jones v. School Board of the City of Alexandria, Virginia, 4 Cir., 278 F.2d 72. Furthermore, the record in this case indicates that the State Board of Education regards the Alabama School Placement Law as a law to be used merely when a school board is faced with demands for desegregation. Such a use of the Alabama Placement Law, since such is clearly unconstitutional, will be enjoined by this Court. It is here noted that the question presented by this record with reference to the Alabama School Placement Law is exactly the same question which was reserved in Shuttlesworth v. Birmingham Board of Education, 162 F.Supp. 372 (N.D.Ala.1958), aff'd 358 U.S. 101, 79 S.Ct. 221, 3 L.Ed.2d 145. The District Court in the Shuttlesworth case said:

"All that has been said in this present opinion must be limited to the constitutionality of the law *upon its face*. The School Placement Law

furnishes the legal machinery for an orderly administration of the public schools in a constitutional manner by the admission of qualified pupils upon a basis of individual merit without regard to their race or color. We must presume that it will be so administered. If not, in some future proceeding it is possible that it may be declared unconstitutional in its application."

The United States Supreme Court affirmed the Shuttlesworth decision on the same "limited ground on which the District Court rested its decision." This Court is not willing at this time, however, to declare the Alabama Placement Law unconstitutional. Future use of this law by the school authorities in the State of Alabama may, if it is applied in a constitutional manner, serve a good purpose, not only for the Alabama public school system but for Alabama citizens of both races. It should not now be stricken down because of its application in Macon County, Alabama, by the Macon County school authorities since its illegal use by that body was brought about through the intense pressure of the Governor of the State of Alabama, the State Superintendent of Education, and the State Board of Education. Such future interference and pressures will not be sanctioned. Future use of the Placement Law in somewhat more normal circumstances should be awaited before finally determining the constitutionality of its use. This Court will also retain jurisdiction as to this aspect of the case.

The temporary restraining order of February 3, 1964, modified as herein indicated, will be enlarged to a preliminary injunction against all the defendants, including the Governor of the State of Alabama as ex officio President of the State Board of Education, the State Superintendent of Education, and the State Board of Education and the individual members thereof. The Macon County Board of Education will be required to extend its proposal for the desegregation of the Macon County school system for the school year commencing September, 1964. The Governor of the State of Alabama as ex officio President of the State Board of Education, the Superintendent of Education for the State of Alabama, and the Alabama State Board of Education and the individual members thereof will be enjoined from preventing or attempting to prevent, or obstructing or interfering in any way with the Macon County Board of Education or any of the city or county boards of education throughout the State of Alabama in their compliance with the orders of the Federal courts requiring the elimination of racial discrimination in the Alabama public school system. The use of the Alabama grant-in-aid laws by the paying or the authorizing or the approving for payment of any tuition under the provisions of the Alabama Code to any child, parent, or guardian in connection with the attendance of a child or children in the schools of Macon County or any other school throughout the State of Alabama where the attendance in the school to be attended by such child is limited or restricted upon the basis of race or color will not be sanctioned. The Macon Academy of Tuskegee, Alabama, will be made a party defendant in this action pursuant to Rule 21 of the Federal Rules of Civil Procedure and will be afforded an opportunity to be heard upon the question of whether that institution is part of the public school system of the State of Alabama. No order will be entered at this time desegregating all the public schools of the State at either the elementary and secondary level, and no order will be entered at this time declaring the Alabama School Placement Law unconstitutional in its application.

This Court specifically retains jurisdiction of this cause.