Anthony T. LEE, et al., Plaintiffs,

United States of America, Plaintiff–
Intervenor and Amicus Curiae,

National Education Association,
Inc., Plaintiff–Intervenor,

v.

LEE COUNTY BOARD OF EDUCATION,
Russell County Board of Education,
Tallapoosa County Board of Education,
Alexander City Board of Education, Auburn City Board of Education, Opelika City Board of Education, Phenix City Board of Education, Roanoke City Board of Education, Butler County Board of Education, Covington County Board of Education, Elmore County Board of Education, et al., Defendants.

Civil Action Nos. 845–E, 848–E, 849–E, 850–E, 851–E, 853–E, 854–E, 855–E, 3099–N, 3102–N and 3103–N.

United States District Court,
M.D. Alabama,
Northern and Eastern Divisions.

April 21, 1997.

Solomon S. Seay, Jr., Gray, Seay & Langford, Montgomery, AL, for plaintiffs in Nos. 853–E, 845, 849–E, 851–E, 3102–N.

Wayne P. Turner, Deputy Asst. Atty. Gen., Daniel L. Jennings, Asst. Atty. Gen., Civ. Rights Div., U.S. Dept. of Justice, Washington, DC, Kenneth E. Vine, Asst. U.S. Atty., Montogomery AL, Mark Gross, Dept. of Justice, Civ. Rights Div., Appellate Section, Washington, DC, for U.S. in Nos. 853–E, 845, 851–E..

Gray, Seay & Langford, Montgomery AL, Watkins & Carter, Montgomery, AL, for NEA in Nos. 853–E, 845, 851–E.

Robison, Belser, Brewer & Mancuso, Montgomery, AL, Robert T. Meadows, III, Opelika, AL, for defendants in Nos. 853–E, 845, 851–E.

Denise Azar, Michael A. White, State of Alabama, Dept. of Educ., Montgomery, AL, for Alabama State Bd. of Educ. in Nos. 853–E, 845, 851–E.

Clyde M. Zeanah, Opelika, AL, for Superintendent of Educ. in Nos. 853–E, 845, 851–E.

William Bradford Reynolds, Asst. Atty. Gen., Nathaniel Douglas, Gaye L. Hume Educational Opportunities Litigation Section, Civ. Rights Div., Washington, DC, Kenneth A. Mines, John R. Moore, Pauline A. Miller, Kathryn M. Woodruff, U.S. Dept. of Justice, Civ. Rights Div., Educational Opportunities Section, Washington, DC, for plaintiffs in No. 849–E.

Gloria J. Browne, NAACP Legal Defense & Educational Fund, Inc., New York City, for NEA in Nos. 849–E, 851–E, 855–E.

John F. Dillon, IV, Dillon, Kelley & Brown, Alexander City, AL, for defendants in Nos. 849–E, 850–E.

Jimmy K. Sanford, Dadeville, AL, for Superintendent of Educ. in No. 849–E.

Gray, Seay & Langford, Montgomery, AL, for plaintiffs and N.E.A. in Nos. 850–E, 854–E, 855–E.

Jerris Leonard, Asst. Atty. Gen., Civ. Rights Div., U.S. Dept. of Justice, Washington, DC, Redding Pitt, U.S. Atty., Montgomery, AL, for U.S. in No. 854–E.

Smith & Miller, Phenix City, AL, for defendants in No. 854–E.

James E. Owen, Phenix City, AL, for Superintendent of Educ. in No. 854–E.

Franz R. Marshall, Civ. Rights Div., U.S. Dept. of Justice, Washington, DC, Redding Pitt, U.S. Atty. (Kenneth E. Vines), Montgomery, AL, for U.S. in No. 850–E.

S.C. Doss, Jr., Alexander City, AL, for Superintendent of Educ. in No. 850–E.

Solomon S. Seay, Jr., Montgomery, AL, for plaintiffs and NEA in Nos. 848–E, 851–E.

Kenneth E. Vines, Asst. U.S. Atty., Montgomery, AL, L. LaVern Younger, U.S. Dept. of Justice, Civ. Rights Div., Educ. Section, Washington, DC, Isabelle Katz Pinzler, Kenneth A. Mines, John R. Moore, Pauline A. Miller, Kathryn M. Woodruff, U.S. Dept. of Justice Civ. Rights Div., Educ. Opportunities Section, Washington, DC, for U.S. in No. 851–E.

Arnold W. Umbach, Jr., Opelika, AL, for Auburn City Bd. of Educ. in No. 851–E.

Sydney S. Smith, Phenix City, AL, for defendants in No. 851–E.

Richard F. Johnston, Asst. Atty. Gen., Civ. Rights Div., U.S. Dept. of Justice, Washington, DC, Barry E. Teague, Montgomery, AL, for U.S. in No. 848–E.

Kenneth Vines, Asst. U.S. Atty., Montgomery, AL, Nathaniel Douglas, Pauline Miller, Kathleen S. Devine, Civ. Rights Div., U.S. Dept. of Justice, Washington, DC, Kenneth Thomas, Mark Englehart, Thomas, Means & Gillis, P.C., Montgomery, AL, Gloria J. Browne, NAACP Legal Defense & Educational Fund, Inc., New York City in No. 848–E.

Gray, Seay & Langford, Montgomery, AL, for NEA in Nos. 848–E, 3102–N, 3103–N.

Troy Massey, Montgomery, AL, for NEA as it relates to Margie Walker & Leon Crenshaw in No. 848–E.

George Beck, Montgomery, AL, for Chanchal Narang in No. 848–E.

T. Larry Thacker, Phenix City, AL, for Superintendent of Educ. in No. 848–E.

James McKoon, Phenix City, AL, Sydney S. Smith, Smith & Smith, Phenix City, AL, for defendants in No. 848–E.

David L. Norman, Asst. Atty. Gen., Civ. Rights Div., U.S. Dept. of Justice, Washington, DC, Redding Pitt, U.S. Atty., Montgomery, AL, for U.S. in No. 855–E.

James Irby, Roanoke, AL, for Superintendent of Educ. in No. 855–E.

Kenneth A. Mines, Isabelle Katz Pinzler, John R. Moore, Pauline A. Miller, Jeanette Lien, Kathryn M. Woodruff, Kathleen S. Devine, U.S. Dept. of Justice Civ. Rights Div., Educ. Opportunities Section, Washington, DC, for U.S. in No. 855–E.

Donald B. Sweeney, Jr., Rives & Peterson, Birmingham, AL, for defendants in No. 855–E.

Yetta G. Samford, Jr., Samford, Denson, Horsley & Pettey, Opelika, AL, for defendants in No. 845–E.

Tennis C. Britton, Jr., Opelika, AL, for Superintendent of Educ. in No. 845–E.

Jerris Leonard, Asst. Atty. Gen., Civ. Rights Div., U.S. Dept. of Justice, Washington, DC, John Dunne, Asst. Atty. Gen., Nathaniel Douglas, Salliann S.M. Dougherty, Civ. Rights Div., Washington, DC, for U.S. in No. 3102–N.

Susan Reeves, Birmingham, AL, for Covington Co. Bd. of Educ. in No. 3102–N.

Allen G. Woodard, Laird, Woodard & Baker, Andalusia, AL, for defendants in No. 3102–N.

Dale Odom, Andalusia, AL, for Superintendent of Educ. in No. 3102–N.

Solomon S. Seay, Jr., Montgomery, AL, for plaintiff in No. 3009–N.

Drew S. Days, III, Asst. Atty., Kevin P. Holewinski James Eldon Wilson, U.S. Atty., Salliann S. M. Dougherty, U.S. Dept. of Justice, Educational Opportunities Litigation Sec., Civ. Rights Div., Washington, DC, for U.S. in No. 3009–N.

Lewis S. Hamilton, William Hamilton, Powell & Hamilton, Greenville, AL, T.W. Thagard, David R. Boyd, Smith, Bowman, Thagard, Crook & Culpepper, Montgomery, AL, for defendants in No. 3099–N.

James Shelby Searcy, Greenville, AL, for Superintendent for Educ. in No. 3099–N.

Donald V. Watkins, Gray, Seay & Langford, Montgomery, AL, for plaintiffs in No. 3103–N.

Drew S. Days, III, Asst. Atty. Gen., Civ. Rights Div., U.S. Dept. of Justice, Washington, DC, Richard F. Johnsotn, Barry E. Teague, Ken Vines, Asst. Attys., Montgomery, AL, for U.S. in No. 3103–N.

W. Troy Massey, Montgomery, AL, for NEA in No. 3103–N.

George P. Howard, Howard, Dunn, Howard & Howard, Wetumpka, AL, for defendants in No. 3103–N.

John C. Whatley, Wetumpka, AL, for Superintendent of Educ. in No. 3103–N.

### ORDER

MYRON H. THOMPSON, Chief Judge.

In an order entered in these eleven long-standing school desegregation cases on February 12, 1997, the court stated that "the parties should now move toward 'unitary status' for the school systems in these cases and for the termination of the litigation in these cases." In a later order entered on March 14, 1997, the court established what it believed would be "an orderly procedure through which the defendant school systems could achieve unitary status so that control over these systems may be returned to local authorities operating in compliance with the Constitution."

In the meantime, the plaintiffs and plaintiff-intervenor United States of America have raised the question whether the "State defendants"—the Alabama State Board of Education, the Governor as President ex officio of the State Board of Education, the Superintendent of the State Board, the individual members of the State Board, and perhaps others—are not only defendants in the original, state-wide case of *Lee v. Macon County Board of Education*, civil action no. 604–E, but in all of the local off-shoots of the *Macon County* case, including the eleven cases now before this court. For the reasons that follow, the court concludes that the State defendants remain, to this day, party-defendants in all the off-shoot cases, and continue to be subject to all the outstanding orders and injunctions stemming from the state-wide *Macon County* case.

### I. BACKGROUND

● These eleven cases had their origin in January 1963, when several African–American parents and school children of Macon County, Alabama filed a complaint against the Macon County Board of Education, its superintendent, and its individual members, requesting that a single-judge court prohibit the school system from continuing its policy, practice, and custom of operating a racially segregated school system. On August 22, 1963, after a hearing, the court granted the relief sought by the plaintiffs. *Lee v. Macon County Bd. of Educ.*, 221 F.Supp. 297 (M.D.Ala.1963). Acting pursuant to an executive order of the Governor of Alabama, Alabama State Troopers physically prevented African–American pupils from entering one of the county's all-white high schools. On September 24, 1963, the court responded with an order temporarily restraining implementation of the executive order and prohibiting any interference with compliance with court orders. *United States v. Wallace*, 222 F.Supp. 485 (M.D.Ala.1963) (five-judge court) (per curiam).

● In February 1964, the plaintiffs filed an amended and supplemental complaint alleging that State officials, including the State Board of Education, its members, the State Superintendent, and the Governor as President of the State Board, had asserted general control and supervision over all the public

schools throughout the State of Alabama in order to continue the operation of a racially segregated school system. These State officials were made defendants. *See, e.g., Lee v. Macon County Bd. of Educ.*, 231 F.Supp. 743, 745 (M.D.Ala.1964) (three-judge court) (per curiam); *see also Lee v. Macon County Bd. of Educ.*, civil action no. 604–E at 2 (M.D.Ala. March 31, 1970) (three-judge court). On February 3, 1964, after a three-judge court had been empaneled to hear the state-wide aspects of the litigation, that court issued a temporary restraining order, and, on July 13, 1964, converted that order into a preliminary injunction, specifically naming the State Board and the State Superintendent and enjoining them from interfering with local city and county school boards in their compliance with the orders of the federal court. *Macon County Bd. of Educ.*, 231 F.Supp. at 751, 757–58. The three-judge court refrained, at that time, from issuing an order requiring state-wide desegregation of local school systems. However, the State defendants were required to use their control and supervision over the public schools to promote and encourage the elimination of racial discrimination. *Id.* at 755.

• In 1967, confronted with evidence that the State officials had engaged in a wide range of activities designed to maintain segregated public education throughout the State, the three-judge court concluded that only the imposition of a "freedom-of-choice" state-wide plan, applicable to every school system in the State not then under court order, could effectively achieve meaningful school desegregation. The court found that "the most significant action by these defendant state officials, designed to maintain the dual public school system based upon race, is found in the day-to-day performance of their duties in the general supervision and operation of the system." *Lee v. Macon County Bd. of Educ.*, 267 F.Supp. 458, 470 (M.D.Ala.) (three-judge court) (per curiam), *aff'd sub nom. Wallace v. United States*, 389 U.S. 215, 88 S.Ct. 415, 19 L.Ed.2d 422 (1967). More specifically, the court found, in part, as follows:

(1) *School construction and consolidation:* "The evidence in this case is absolutely overwhelming that the State Board of Education and the Alabama Superintendent of Education, with the assistance of their staff in the State Department of Education, have exercised extensive control over school construction and consolidation in such a manner as to perpetuate a dual public school system based upon race and to interfere with the orderly desegregation of the public schools in the State of Alabama." *Id.* at 471.

(2) *Faculty and staff:* "Defendants, through the use of pressures ... have required local boards to conform to their views on faculty and staff segregation in the school system. As a matter of fact, they have acted affirmatively to use the Minimum Program Fund to make segregation of the faculties and staffs in the several school districts attractive." *Id.* at 473.

(3) *Transportation:* "This Court's finding in its July 1964 order that these defendants have used this control over transportation to perpetuate segregation is as true now as it was then. The State Board continues to finance and permit the operation of school bus systems organized on a racially discriminatory basis." *Id.* at 474.

The court then imposed a state-wide plan, which included the following:

(1) *School construction and consolidation:* The State Superintendent of Education was required to "continue to conduct surveys of the local school systems throughout the State." *Id.* at 480. The court stated that "Approval by the State Superintendent of Education of all sites upon which schools are to be constructed or existing facilities expanded shall be withheld if ... the construction will not, to the extent consistent with the proper operation of the school system as a whole, further the disestablishment of state enforced or encouraged public school segregation and eliminate the effects of past state enforced or encouraged racial discrimination in the State's public school system." *Id.* at 481.

(2) *Faculty and staff:* "The State Superintendent of Education shall develop a detailed program for assisting and encour-

aging faculty desegregation in the local school systems throughout the State." *Id.*

(3) *Transportation:* The State defendants were ordered to "require all local school boards ... to eliminate race as a basis for assigning students to school buses and to eliminate overlapping and duplicative bus routes based on race." *Id.* They were ordered to "require all of said local school boards, prior to the commencement of the 1967–68 school year, to establish nondiscriminatory criteria governing the availability of bus transportation to students within the school district." *Id.* at 482.

(4) *Facilities:* The State Superintendent of Education was required to "develop, and submit to this Court and all the parties within 120 days after the entry of this decree, a detailed program for bringing the quality of the physical facilities, equipment, services, courses of instruction, and instructional materials of schools previously maintained for Negro students up to the level in schools previously maintained for white students." *Id.* at 484.

(5) *Reporting:* The court also placed substantial reporting requirements on the State defendants. *Id.* at 484–85.

In placing these obligations on the State defendants, the three-judge court observed that "the defendant state officials have engaged in a wide range of activities to maintain segregated public education throughout the State of Alabama. These activities have been concerned with and have controlled virtually every aspect of public education in the state, including site selection, construction, consolidation, assignment of teachers, allocation of funds, transportation, vocational education, and the assignment of students." *Id.* at 478. The court continued that it "can conceive of no other effective way to give the plaintiffs the relief to which they are entitled under the evidence in this case than to enter a uniform state-wide plan for school desegregation, made applicable to each local county and city system not already under court order to desegregate, and to require these defendants to implement it. Only in this way can uniform, expeditious and substantial progress be attained, and only in this way

can the defendant state officials discharge the constitutional duty that was placed upon them." *Id.*

● In August 1968, the three-judge court found it necessary to respond again to motions for additional relief filed by the plaintiffs and by the United States of America, which had intervened as a party. The motions requested, on the basis of three Supreme Court cases decided in May 1968, *Green v. County Sch. Bd. of New Kent County,* 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968), *Raney v. Board of Educ. of the Gould Sch. Dist.,* 391 U.S. 443, 88 S.Ct. 1697, 20 L.Ed.2d 727 (1968), and *Monroe v. Board of Comm'rs of the City of Jackson,* 391 U.S. 450, 88 S.Ct. 1700, 20 L.Ed.2d 733 (1968), that the court abandon "freedom of choice" as an appropriate remedy. The three-judge court found the three Supreme Court cases distinguishable on their facts, and it reaffirmed "freedom of choice" as "the most feasible method to pursue" for the several school systems then involved in the state-wide case. *Lee v. Macon County Bd. of Educ.,* 292 F.Supp. 363, 367 (M.D.Ala. 1968) (three-judge court) (per curiam). In the same order, faculty desegregation and minimum student standards were ordered for each system. *Id.* at 367–69. The court stated that "The defendants, and particularly the State Superintendent of Education in the exercise of his supervisory powers over the local school systems, will have the responsibility of seeing that these minimum faculty desegregation requirements are fully, timely and completely implemented and of seeing that the schools designated to be closed are no longer operated as a part of the public school system in the State of Alabama." *Id.* at 368. Of course, "freedom of choice," as a remedy was nonetheless later overturned.

● "Through subsequent orders, th[e] three-judge court ... amplified and modified the August 1968 order, and through a series of orders commencing on October 14, 1968, and continuing through August 1969 ... made the individual school boards, the members thereof, and the superintendents formal parties defendant" in the state-wide litigation. *Macon County Bd. of Educ.,* civil action no. 604–E at 5 (M.D.Ala. March 31, 1970). The

state-wide case, therefore, "evolved into many separate school desegregation cases concerning school systems that are located in the three federal judicial districts of Alabama." *Id.* By order entered on March 31, 1970, the three-judge court concluded that, for the cases in which a "terminal-type" plan for desegregation of the school system had been approved and ordered implemented with the commencement of the 1970–71 school year, the cases "should be transferred for supervision and for all further proceedings to the United States District Court for the geographic area in which the school system is situated." *Id.* Relying on 28 U.S.C.A. § 1404(a), the court reasoned that it "is quite evident that the convenience of the parties and witnesses and the interest of justice would be better served by the decentralization of this case and a transfer of the separate school desegregation cases to the district courts having regular jurisdiction over the areas in which the school districts are situated." *Id.* at 5–6. The eleven cases now before this single-judge court were among those transferred in June 1970.

• Nevertheless, the State defendants recognized their continuing obligations, under the orders of the three-judge court, despite the transfers. For example, on October 5, 1970, the State Superintendent of Education filed a report on the progress made towards desegregation in school systems which had not completely abolished their dual school systems prior to the beginning of the 1970–71 school year.

## II. DISCUSSION

### A.

There can be no question but that State officials—in particular, the Alabama State Board of Education, the Governor as President ex officio of the State Board of Education, the Superintendent of the State Board, and the individual members of the State Board—were, and continue to be, defendants in the state-wide *Macon County* litigation. This is evident not only from a review of the court files, but has also been expressly and repeatedly reaffirmed in the orders of the three-judge court. *See, e.g., Macon County Bd. of Educ.,* 231 F.Supp. at 745 ("In February of 1964, plaintiffs filed an amended and supplemental complaint ... join[ing] as defendants ... the Alabama State Board of Education, the State Superintendent of Education and George C. Wallace as President of the State Board of Education."); *Macon County Bd. of Educ.,* civil action no. 604–E at 2 (M.D.Ala. March 31, 1970) ("[i]n February 1964 ... [t]he State Board of Education and its members, the State Superintendent of Education and the Governor, as ex officio President of the State Board of Education, were made defendants."). The question still remains, however, whether this fact leads to the conclusion that the State defendants were, and continue to be, defendants in the local city and county cases.

Admittedly, soon after the transfer of the local aspects of the state-wide litigation to this court, the participation of State officials in these cases ceased. First, all orders issued by the single-judge court after transfer were addressed to only the local city and county defendants. Second, the only defendants the single-judge court served with orders were the local city and county defendants; the State defendants were not served. Third and finally, counsel for the parties—including the plaintiffs—ceased serving copies of filed papers on counsel for the State defendants; the plaintiffs served copies of their filed papers on only counsel for the local defendants. However, the practice of serving fewer than all parties involved in the litigation was observed in the three-judge court state-wide litigation as well. For example, the three-judge court would issue orders addressed to only certain defendants and only those defendants were served, even though other defendants were involved in the litigation. Similarly, parties in the state-wide litigation would serve pleadings on only the defendants involved in certain aspects of the case, even though there were other defendants involved in the overall litigation. In other words, in the state-wide litigation, fewer than all parties were often served with court orders and copies of filed papers. Therefore, the fact that a defendant ceased to be involved in an aspect of litigation is not necessarily dispositive of that defendant's status in the overall litigation.

## B.

There is, however, other evidence that points toward the conclusion that the State defendants were, and continue to be, defendants in the local cases before this court: the overall history of both the state-wide and the local litigation. First, this history reflects that primary and secondary public education in the State of Alabama is subject to pervasive *dual* control, that is, expansive control at both the state and local levels, but with state action trumping any inconsistent local action. The three-judge court repeatedly made clear that the State officials exercise general and comprehensive authority over local school systems. In its order of 1964, the three-judge court stated, "The evidence in this case is clear that over the years the State Board of Education and the State Superintendent of Education have established and enforced rules and policies regarding the manner in which the city and county school systems exercise their responsibilities under state law. This control relates, among other things, to finances, accounting practices, text books, transportation, [and] school construction." *Macon County Bd. of Educ.*, 231 F.Supp. at 750–51. The State officials, the court continued, "have demonstrated that they have considerable authority and power over the actual operation of the local school systems. This is true irrespective of any supposed limitations on that power as set out in the Alabama law." *Id.* at 755. The court held that "there is no question that the State Board of Education of Alabama has general control and supervision over the public schools." *Id.* at 756. Later, in 1967, the court repeated this observation, stating that the State Board, its individual members, and the State Superintendent "had enormous authority and power over the actual operation of the various local school systems throughout the state ... based on the actual assumption or usurpation of authority by these defendants over the local school boards exemplified by their total control, when they chose to exert it, ... and also by the general statutory power granted to [them]." *Macon County Bd. of Educ.*, 267 F.Supp. at 462. Finding the evidence "absolutely overwhelming" that, despite the 1964 injunction, State officials had continued in various ways to exercise extensive control so as to interfere with orderly desegregation of public schools in the state, *id.* at 471, and that it could "[ ]not seriously be contended that the defendants do not have the authority and control necessary to accomplish [it]," *id.* at 478, the three-judge court entered a uniform state-wide plan for school desegregation and required the state officials to implement it. And finally, in the transfer order entered on March 31, 1970, the three-judge court reaffirmed its earlier observations with the statement that "the State Board of Education has exerted general control and supervision over all the public schools in the State of Alabama in order to continue the operation of a racially segregated school system throughout the State of Alabama." *Macon County Bd. of Educ.*, civil action no. 604–E at 2 (M.D.Ala. March 31, 1970). In 1968, the three-judge court, however, further acknowledged that local school officials also exercised comprehensive authority over their local school systems. Confronted with this fact, the court wrote that the *Macon County* state-wide case had "evolved into many separate school desegregation cases concerning school systems that are located in the three federal judicial districts of Alabama." *Macon County Bd. of Educ.*, civil action no. 604–E at 5 (M.D.Ala. March 31, 1970). In light of this duel sovereignty over local school systems, it is proper that State officials be parties to any litigation seeking redress for maintaining a racially segregated public school system.

Second, this history indicates not only that State officials should be parties to these eleven cases, but that they already are. The local cases, while taking on new civil action numbers after transfer, were not initiated with new complaints, and thus were not new pieces of litigation. Instead, they were transfers out of another, older piece of litigation, the state-wide *Macon County* case, pursuant to 28 U.S.C.A. § 1404. The local cases therefore came into existence before their transfer and thus pre-date their current civil action numbers and filing dates in this court. This is not unusual, because the life of any case that is transferred from one court to another pursuant to § 1404 begins before the transfer and continues after; otherwise,

there would be nothing to transfer. The local cases, therefore, consist of earlier pleadings in the original state-wide litigation, as well as later pleadings in the transferred cases. Indeed, the first entry on the court dockets for the eleven cases now before the court is: "For entries prior to June 24, 1970, see docket sheet of 604–E."

Therefore, all orders in the state-wide case that related to the local school systems are also part of the respective local cases. These orders include the 1964 order requiring the State defendants to use their control and supervision over the public schools to promote and encourage the elimination of racial discrimination; the 1967 state-wide plan requiring desegregation of local school systems; the modifications to the state-wide plan in 1968; the respective terminal orders for the local school systems; and the orders requiring the transfer of the local aspects of the state-wide litigation, for school systems located in the Middle District of Alabama, to this court. As a result, if the State defendants were to fail to live up to their obligations under the 1964, 1967, and 1968 orders of the three-judge court with regard to the local school systems, this single-judge court could enforce those orders against all the defendants who were originally subject to them, because those orders are, to the extent they are still outstanding, applicable to those same defendants in these transferred cases.

The court therefore concludes that all parties to the orders in the state-wide *Macon County* case and in the local cases are parties before this court. In other words, because the State defendants are still subject to the 1964, 1967, 1968 orders in the state-wide case, they are parties to these local cases as well.

### C.

Finally, there is another compelling reason to conclude that the State defendants remain parties to these eleven local cases. As stated, the court has, on its own, initiated a process to move the local school systems at issue toward "unitary status" and for the eventual termination of the eleven cases. The court took this action based on the belief that "The duty and responsibility of a school district once segregated by law is to take all steps necessary to eliminate the vestiges of the unconstitutional *de jure* system. This is required in order to ensure that the principal wrong of the *de jure* system, the injuries and stigma inflicted upon the race disfavored by the violation, is no longer present." *Freeman v. Pitts*, 503 U.S. 467, 485, 112 S.Ct. 1430, 1443, 118 L.Ed.2d 108 (1992).

The Supreme Court has explained that "The objective of *Brown [v. Board of Education*, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954),] was made more specific by [the] holding in *Green [v. School Bd. of New Kent County*, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968),] that the duty of a former *de jure* district is to 'take whatever steps might be necessary to convert to a unitary system in which racial discrimination would be eliminated root and branch.' 391 U.S., at 437–438, 88 S.Ct., at 1693, 1694." *Freeman*, 503 U.S. at 486, 112 S.Ct. at 1443. The Court has further "identified various parts of the school system which, in addition to student attendance patterns, must be free from racial discrimination before the mandate of *Brown* is met: faculty, staff, transportation, extracurricular activities, and facilities.... [These] factors are a measure of the racial identifiability of schools in a system that is not in compliance with *Brown*." *Id.*

The Court has further explained that, "Because 'federal supervision of local school systems was intended as a temporary measure to remedy past discrimination,'" [*Board of Ed. of Oklahoma City Pub. Sch. v. Dowell*, 498 U.S. 237, 247, 111 S.Ct. 630, 637, 112 L.Ed.2d 715 (1991) ], trial courts should anticipate an eventual "showing" from "a school district operating under a desegregation order for complete or partial relief from that order." *Missouri v. Jenkins*, 515 U.S. 70, ——, 115 S.Ct. 2038, 2049, 132 L.Ed.2d 63 (1995). The Court explained that the following factors, among others, should "inform" a court in determining whether a school district has made an adequate showing: " '[1] whether there has been full and satisfactory compliance with the decree in those aspects of the system where supervision is to be withdrawn; [2] whether retention of judicial control is necessary or practicable to achieve

compliance with the decree in other facets of the school system; and [3] whether the school district has demonstrated to the public and to the parents and students of the once disfavored race, its good-faith commitment to the whole of the court's decree and to those provisions of the law and the Constitution that were the predicate for judicial intervention in the first instance.'" *Id.* (quoting *Freeman,* 503 U.S. at 491, 112 S.Ct. at 1446). "The ultimate inquiry is 'whether the [constitutional violator] ha[s] complied in good faith with the desegregation decree since it was entered and whether the vestiges of past discrimination ha[ve] been eliminated to the extent practicable.' *Id.,* at 492, 112 S.Ct., at 1446 (quoting *Dowell, supra,* 498 U.S. at 249–250, 111 S.Ct. at 638)." *Jenkins,* 515 U.S. at ——, 115 S.Ct. at 2049.

Here, the State defendants admit that they "had an official policy favoring racial segregation in public education." State defendants' brief filed on April 4, 1997, at 2. They also admit that, in 1967, the three-judge court placed on them "specific requirements . . . dealing with school construction and consolidation, teachers, school transportation, desegregation plans for local school systems, [and] equalization of faculties." *Id.* at 3. The State defendants further "agree . . . [that they] have continuing obligations with regard to vestiges of segregation which may be linked to the prior state-mandated dual system." *Id.* at 6–7. They note, however, that "many school systems have achieved unitary status since 1970, without the State Defendants' involvement." *Id.* at 7.

The State defendants overlook, however, that there has been no declaration that the eleven school systems at issue have achieved unitary status. Indeed, these system are now again before the court so as to move them toward unitary status as soon as possible. Therefore, as of now, the State defendants have not satisfied the ultimate burden placed on them by the Supreme Court—that is, "the showing that must be made by a school district operating under a desegregation order for complete or partial relief from that order." *Jenkins,* —— U.S. at ——, 115 S.Ct. at 2049. The State defendants, who by their own admissions are in whole or in part responsible for the "dual system" that existed and may continue to exist in the eleven school systems now before the court, have not met their burden under *Green, Freeman,* and *Jenkins,* of showing that school attendance, faculty, staff, transportation, extracurricular activity, and facilities, are now all "free from racial discrimination." *Freeman,* 503 U.S. at 486, 112 S.Ct. at 1443. Nor have they made a showing that "there has been full and satisfactory compliance with the decree in those aspects of the system where supervision is to be withdrawn," *Jenkins,* 515 U.S. at ——, 115 S.Ct. at 2049 (quoting *Freeman,* 503 U.S. at 491, 112 S.Ct. at 1446), in particular, they have not shown that there has been "full and satisfactory compliance" with the 1964, 1967, and 1968 orders of the three-judge court with regard to the eleven school systems now before the court; that "retention of judicial control is [not] necessary or practicable to achieve compliance with" these orders, *id.;* or that they "ha[ve] demonstrated to the public and to the parents and students of the once disfavored race, [their] good-faith commitment to the whole" of these orders. *Id.*

Accordingly, for the above reasons, it is the ORDER, JUDGMENT and DECREE of the court as follows:

(1) It is DECLARED that the Alabama State Board of Education, the Governor as President ex officio of the State Board of Education, the Superintendent of the State Board, and the individual members of the State Board, and all other State defendants in the original *Lee v. Macon County Board of Alabama* case, civil action no. 604–E, are party-defendants in the eleven cases now before this court: *Lee v. Lee County Board of Education,* civil action no. 845–E; *Lee v. Russell County Board of Education,* civil action no. 848–E; *Lee v. Tallapoosa County Board of Education,* civil action no. 849–E; *Lee v. Alexander City Board of Education,* civil action no. 850–E; *Lee v. Auburn City Board of Education,* civil action no. 851–E; *Lee v. Opelika City Board of Education,* civil action no. 853–E; *Lee v. Phenix City Board of Education,* civil action no. 854–E; *Lee v. Roanoke City Board of Education,* civil action no. 855–E; *Lee v. Butler County Board of Education,* civil action no. 3099–N; *Lee v.*

*Covington County Board of Education,* civil action no. 3102–N; and *Lee v. Elmore County Board of Education,* civil action no. 3103–N.

(2) The plaintiffs in each of these local cases are directed to serve the Alabama State Board of Education, the Governor as President ex officio of the State Board of Education, the Superintendent of the State Board, and the individual members of the State Board, and all other State defendants in the original *Lee v. Macon County Board of Alabama* case, civil action no. 604–E, or their attorneys, with copies of any filings they make from the date of this order.