Anthony T. LEE, et al., Plaintiffs,

United States of America, Plaintiff–Intervenor and Amicus Curiae,

National Education Association, Inc., Plaintiff–Intervenor,

v.

BUTLER COUNTY BOARD OF EDUCATION, et al. Defendants.

Civ. A. No. 70–T–3099–N.

United States District Court, M.D. Alabama, Northern Division.

Feb. 5, 2002.

Gloria J. Browne–Marshall, New York City, Stanley F. Gray, Fred (Sr.) D. Gray, Gray, Langford, Sapp, McGowan, Gray & Nathanson, Tuskegee, AL, Kenneth E. Vines, U.S. Attorney's Office, Montgomery, AL, Jeremiah Glassman, John R. Moore, Isabelle Katz Pinzler, Pauline A. Miller, Kathryn Woodruff, Kathleen S. Devine, Jeanette Lim, Ross E. Wiener, Kenneth D. Johnson, K. Heshima White, Anita S. Hodgkiss, U.S. Department of Justice, Civil Rights Division Educational Opportunities Section, Washington, DC, for Plaintiffs.

Lewis Steiner Hamilton, Greenville, AL, Anita L. Kelly, Department of Education Office of General Counsel, Montgomery, AL, Michael R. White, State Department of Education Office of General Counsel, Montgomery, AL, Edward A. Hosp, Office of the Governor, Montgomery, AL, for Defendants.

## OPINION

MYRON H. THOMPSON, District Judge.

In this longstanding school desegregation case, the plaintiffs, a class of black students, obtained relief from race discrimination in the operation of a *de jure* segregated school system. The defendants are the Butler County Board of Education, its members, and the County Superintendent of Education, as well as the

Alabama State Board of Education, its members, the State Superintendent of Education, and the Governor of Alabama. The Butler County School Board and its members and superintendent have moved for declaration of unitary status and termination of this litigation. Based on the evidence presented, the court concludes that the motion should be granted and this litigation terminated as to the Butler County Board of Education and its members and superintendent.

## I. BACKGROUND

### A. Early Litigation

This case began in 1963 when several black students and their parents sued the Macon County Board of Education and its superintendent seeking relief from the continued operation of a racially segregated school system. On July 3, 1963, the United States was added as plaintiff-intervenor and amicus curiae in order that the public interest in the administration of justice would be represented. *Lee v. Macon County Bd. of Educ.*, 267 F.Supp. 458, 460 (M.D.Ala.1967). In a hearing before a single-judge court, the Macon County Board was enjoined to make an immediate start to desegregate its schools "without discrimination based on race or color." *Lee v. Macon County Bd. of Educ.*, 221 F.Supp. 297, 300 (M.D.Ala.1963).

After actions by the State of Alabama to prevent implementation of this order, the Macon County plaintiffs filed an amended and supplemental complaint in February 1964 alleging that the Alabama State Board of Education, its members, the State Superintendent, and the Governor as president of the state board, had asserted general control and supervision over all public schools in the State in order to maintain a *de jure* segregated school system. The court found that it was the policy of the State to promote and encourage a dual school system based on race, and the state officials were made defendants. *Lee v. Macon County Bd. of Educ.*, 231 F.Supp. 743 (M.D.Ala.1964) (three-judge court) (per curiam). In subsequent orders, the *Lee* court ordered the State Superintendent of Education to require school districts throughout the State, including the Butler County district, to desegregate their schools. *Lee v. Macon County Bd. of Educ.*, 292 F.Supp. 363 (M.D.Ala.1968); *Lee v. Macon County Bd. of Educ.*, 267 F.Supp. 458 (M.D.Ala.1967) (three-judge court) (per curiam).

A desegregation plan for the Butler County Schools was ordered on June 16, 1970, after the court had reviewed plans proposed by both the Butler County School Board and the United States. The plan established three attendance zones for the County: Northern, Central, and Southern. Later in 1970, the school board was enjoined from engaging in discriminatory employment practices, involving staff dismissals and underpayment of black principals. On June 24, 1970, the three-judge court in *Lee* transferred the jurisdiction over 35 school districts involved in the *Lee* litigation, including the Butler County School District, to a single district judge of the United States District Court for the Middle District of Alabama, where the school districts were located. Several motions to modify the Butler County desegregation order to allow for grade reconfiguration and to close certain facilities were approved during the 1970's and through the mid–1980's. On November 20, 1996, this court approved the Butler County School Board's petition for permission to build a new Greenville High School which opened in the 2000–2001 school year.

Following an investigation of allegations of improper interdistrict transfers involving several school systems, the Eleventh Circuit Court of Appeals held that trans-

fers into the McKenzie School in the Butler County School System violated the district's desegregation obligations. *United States and NEA v. Lowndes County Bd. of Educ.*, 878 F.2d 1301 (11th Cir.1989). The issue was resolved by a consent decree, approved by this court on November 30, 1989, which established rules for student registration and transfers as well as reporting requirements.

### B. The 1998 Consent Decree

On February 12, 1997, this court entered an order affecting eleven school systems, stating that the court was "of the opinion that the parties should now move toward 'unitary status' . . . and for the termination of the litigation [for the school systems] in these cases." The court ordered the parties to confer to determine:

"(a) Whether, in any of the areas set forth in *Green v. County School Board of New Kent*, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716, (1968), the defendants have achieved unitary status and, if so, whether the court may relinquish jurisdiction as to these areas. *Freeman v. Pitts*, 503 U.S. 467, 112 S.Ct. 1430, 118 L.Ed.2d 108 (1992) [These areas are: student attendance patterns, faculty, staff, transportation, extracurricular activities and facilities (footnote omitted)].

"(b) Whether there are *Green* or other areas as to which the plaintiff parties claim that the defendants have not eliminated the vestiges of prior *de jure* segregation.

"(c) Whether the parties can amicably develop a procedure through which the school system can achieve unitary status."

The court thus set in motion a lengthy and deliberative process of reviewing each of the school systems, including Butler County's. The parties in all eleven cases agreed upon the format and scope of informal discovery. The court designated a magistrate judge to oversee discovery and to mediate any disputes that arose during the course of negotiations. The parties in this case conducted lengthy informal discovery to obtain information about the school system, including touring the district's facilities and meeting with class and community members. The plaintiff parties identified those issues for which satisfactory compliance had been attained as well as those areas for which the plaintiff parties identified as needing further attention.

■ On May 20, 1998, the court approved a consent decree detailing the areas of operations in which the school district was partially unitary and those in which further remedial action was necessary. Courts may allow partial or incremental dismissal of a school desegregation case before full compliance has been achieved in every area of school operations; jurisdiction is retained over the remaining parts of a desegregation case. *Freeman v. Pitts*, 503 U.S. 467, 490–91, 112 S.Ct. 1430, 1445, 118 L.Ed.2d 108 (1992). The Butler County School System was found to have achieved unitary status in the areas of student assignment to schools and transportation. Injunctions or portions thereof pertaining to these areas were dissolved, and these functions were appropriately returned to the control of the local governing body, the Butler County Board of Education.

The parties agreed that in order for the Butler County School District to attain unitary status in the remaining areas, the school board would develop policies and procedures in the areas of faculty assignment; student assignment and instruction within schools, including participation in special programs; special education; extracurricular activities; and student discipline. The 1998 decree sets forth in detail the areas to be addressed and the actions to be undertaken. In other words, the

decree represented "a roadmap to the end of judicial supervision" of the Butler County School system. *NAACP v. Duval County Sch.*, 273 F.3d 960, 963 (11th Cir.2001). Many of the areas addressed fall under the *Green* factors, the areas of school operation which are traditionally held as indicators of a desegregated (or not) school system. *Green v. County School Board of New Kent*, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968) (the indicator areas of school operation are: student assignment, faculty and staff, transportation, facilities and extracurricular activities). The parties also addressed what have become known as quality-education issues that more closely relate to a student's day-to-day experiences within a school. *Freeman v. Pitts*, 503 U.S. 467, 472, 112 S.Ct. 1430, 1437, 118 L.Ed.2d 108 (1992).

The Butler County School System was required to file a comprehensive report with the court each year, and the plaintiff parties had the opportunity to advise the school system of any concerns about compliance with the terms of the 1998 consent decree. Concerns raised by the plaintiff parties were noted in annual progress reports. These were discussed at status conferences held on April 10, 2000, and April 10 and August 20, 2001. The school board addressed these concerns through continued review and modification of its programs. As noted below, progress was made in many areas. The 1998 consent decree provided that the board could file for dismissal of the case three years after approval of the decree and after filing the third annual report.

### C. State-wide Issues

Over the course of years, as litigation affecting the individual school districts was dealt with by the courts as separate matters, the state defendants (that is, the Alabama State Board of Education, the board members, the State Superintendent of Ed-

ucation, and the Governor of Alabama) did not participate in the *Lee* litigation. The question arose as to whether the state defendants were even parties in the local off-shoots of the *Lee* cases. Previous rulings, particularly *Lee v. Macon County Bd. of Educ.*, 267 F.Supp. 458 (M.D.Ala. 1967) (three-judge court) (per curiam), *aff'd sub nom. Wallace v. United States*, 389 U.S. 215, 88 S.Ct. 415, 19 L.Ed.2d 422 (1967), held that the state defendants were responsible for the creation and maintenance of segregated public education in the State of Alabama. The court found that state officials had "engaged in a wide range of activities to maintain segregated public education ... [which] controlled virtually every aspect of public education in the state ...." *Lee*, 267 F.Supp. at 478. This court subsequently affirmed that despite cessation of participation by the state defendants when the individual district cases were transferred, the state defendants continue as parties in not only the state-wide litigation, but in all the off-shoot cases. *Lee v. Lee County Bd. of Educ.*, 963 F.Supp. 1122, 1124, 1130 (M.D.Ala. 1997).

The parties identified two issues remaining in the state-wide litigation, "special education" and "facilities." The state-wide issues involving special education were resolved and orders adopting the consent decrees were entered on August 30, 2000, in the eleven *Lee* cases, including this one. Negotiations on the state-wide issues involving facilities are still pending.

### D. Motion for Declaration of Unitary Status

During the August 20, 2001, status conference, the parties agreed that the actions taken by the Butler County School System over the previous three years were in compliance with the 1998 consent decree and justified termination of the case. In particular, during the course of implementing

the decree, the district had developed plans of action addressing each of the areas of continued concern raised by the plaintiff parties, and these plans were adopted by the school board as district policies and procedures. On September 24, 2001, the Butler County School Board and its members and superintendent filed their motion for declaration of unitary status and termination of the litigation. The court required the Butler County School Board to give all plaintiff class members appropriate notice of the motion and procedures for lodging objections.

After the court approved the notice form, the Butler County School Board published, in the local newspaper over a three-week time period, notice of the proposed termination of this litigation and the date of the fairness hearing; the notice also provided procedures for class members and interested persons to file comments and objections with the court regarding the proposed dismissal. Forms for objections and comments were made available in numerous public locations. In addition to the published notice, copies of the termination motion, the future action plans, and the three annual reports were made available at the local school board offices. Notice forms along with forms for objections and comments were sent home with every student enrolled in the Butler County School System. Numerous objections opposing dismissal of the case were filed with the court. On November 13, 2001, the school board held a public meeting to discuss the proposed dismissal. On November 28, the court conducted a fairness hearing, during which the Butler County Superintendent testified, and four persons stated their objections to dismissal of the case.

The court concludes that the Butler County School Board complied with the directives of the court in providing adequate notice of the proposed dismissal to class members as well as to the community. Fed.R.Civ.P. 23(e).

## II. DISCUSSION

### A. Standards for Termination of a School Desegregation Case

It has long been recognized that the goal of a school desegregation case is to convert promptly from a *de jure* segregated school system to a system without "white" schools or "black" schools, but just schools. *Green v. County School Bd. of New Kent County, Va.,* 391 U.S. 430, 442, 88 S.Ct. 1689, 1696, 20 L.Ed.2d 716 (1968). The success of this effort leads to the goal of ultimately returning control to the local school board since "local autonomy of school districts is a vital national tradition." *Freeman v. Pitts,* 503 U.S. 467, 490, 112 S.Ct. 1430, 1445, 118 L.Ed.2d 108 (1992) (quoting *Dayton Bd. of Education v. Brinkman,* 433 U.S. 406, 410, 97 S.Ct. 2766, 2770, 53 L.Ed.2d 851 (1977)). Returning schools to the control of local authorities "at the earliest practicable date is essential to restore their true accountability in our governmental system." *Id.*

◼ The ultimate inquiry concerning whether a school district operating under a school desegregation order to dismantle a *de jure* segregated school system should be declared unitary is whether the school district has complied in good faith with the desegregation decree, and whether the vestiges of prior *de jure* segregation have been eliminated to the extent practicable. *NAACP, Jacksonville Branch v. Duval County Sch.,* 273 F.3d 960, 966 (11th Cir. 2001) (citing *Missouri v. Jenkins,* 515 U.S. 70, 88, 115 S.Ct. 2038, 2049, 132 L.Ed.2d 63 (1995), and quoting *Freeman v. Pitts,* 503 U.S. 467, 492, 112 S.Ct. 1430, 1446, 118 L.Ed.2d 108 (1992)); *see also Manning v. Sch. Bd. of Hillsborough County,* 244 F.3d

927, 942 (11th Cir.), *cert. denied,* —— U.S. ——, 122 S.Ct. 61, 151 L.Ed.2d 28 (2001); *Lockett v. Bd. of Educ. of Muscogee County,* 111 F.3d 839, 843 (11th Cir.1997).

In addition to these articulated constitutional standards, the Butler County School Board was also required to comply with the contractual requirements of the 1998 consent decree which set forth the steps the board was to take to attain unitary status. *NAACP, Jacksonville Branch v. Duval County School,* 273 F.3d 960 (11th Cir.2001). The parties agreed that the board would analyze and review programs and practices in each of the areas in which further actions were required, that is, faculty assignment; student assignment and instruction within schools, including participation in special programs; special education; extracurricular activities; and student discipline. The board was to formulate and adopt procedures and practices designed specifically to address each of these areas. The board was thus required to take specific actions to address concerns the parties argued were vestiges of the prior dual system, to ensure that the school district was being operated on a nondiscriminatory basis.

■ The legal standards for dismissal of a school desegregation case were set forth in the 1998 consent decree as: (1) whether the school district has fully and satisfactorily complied with the court's decrees for a reasonable period of time, (2) whether the vestiges of past discrimination have been eliminated to the extent practicable, and (3) whether the district has demonstrated a good-faith commitment to the whole of the court's decrees and to those provisions of the law and the Constitution that were the predicate for judicial intervention. *Missouri v. Jenkins,* 515 U.S. 70, 87–89,

115 S.Ct. 2038, 2049, 132 L.Ed.2d 63 (1995). By emphasizing that the good-faith component has two parts (that is, that a school district must show not only past good-faith compliance, but a good-faith commitment to the future operation of the school system), the parties looked both to past compliance efforts and to a good-faith commitment to the future operation of the school system through "specific policies, decisions, and courses of action that extend into the future." *Dowell v. Bd. of Educ. of the Oklahoma City Public Schools,* 8 F.3d 1501, 1513 (10th Cir.1993) (citations omitted). Regardless, "[t]he measure of a desegregation plan is its effectiveness." *Davis v. Bd. of Sch. Comm'rs,* 402 U.S. 33, 37, 91 S.Ct. 1289, 1292, 28 L.Ed.2d 577 (1971).

## B. Terms of the 1998 Consent Decree and Compliance Efforts

■ 1. *Faculty and Administrator Assignment:* The Butler County School Board was required to develop policies and procedures to ensure that faculty and staff were assigned to schools across the district so that no school would be identified as a white or black school by the race of the school's faculty. *Singleton v. Jackson Municipal Separate Sch. Dist.,* 419 F.2d 1211, 1218 (5th Cir.1969).* Of particular concern was the faculty ratio at McKenzie School, a small K–12 facility with the only predominately white student enrollment. Because the faculty ratio was 8 % black while the district-wide faculty ratio was just under 25 % black, the school board was required under the 1998 consent decree to develop a plan to recruit black teachers to the school so that the percentage of black teachers at McKenzie would be substantially the same

---

* In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit entered prior to the circuit splitting on September 30, 1981.

as the percentage of black teachers in the Butler County School District as a whole.

The Butler County School Board successfully complied with this provision of the 1998 decree. By the time the second report was filed, the percentage of black faculty members at Mckenzie School increased to 14 %, and for the 2001–2002 school year, the black faculty percentage at the school was 26 %, close to the overall district ratio of 28 %.

*2. Extracurricular Activities:* The school board was required to take all reasonable steps to ensure an equal opportunity for all students to participate in extracurricular activities, including providing notice about activities to students and parents, recruiting black faculty members to be sponsors, and monitoring of participation in extracurricular activities. The school district provides a wide variety of activities and participation opportunities for students. The number of black faculty members acting as sponsors or co-sponsors more than doubled during the terms of the 1998 decree.

*3. Within School Assignment (Quality Education):* The 1998 consent decree required the school board to address several areas involving student participation, particularly by black students, in special programs such as college preparatory and advanced placement classes, certain extracurricular activities, student discipline, and special education. To ensure that such special programs were operated on a nondiscriminatory basis, the board was required to formulate and adopt a range of procedures to provide notice to parents and students, recruit black students to participate in and black faculty members to teach special courses or sponsor extracurricular activities, ensure fair selection procedures into such courses, review discipline procedures, and provide training for teachers and guidance counselors.

The school board developed a data base to track discipline referrals and disciplinary actions. It undertook a comprehensive review of the school district's special programs and developed new or modified existing efforts to increase student participation. This analysis enabled the board to identify areas it felt needed increased attention. These efforts, in fact, resulted in increased participation by black students. While many special programs are voluntary, that is, students choose whether or not to enroll in advanced classes or to seek an advanced diploma, more black students did enroll in these classes and more black students graduated with advanced diplomas over the course of the decree's implementation.

*4. Special Education:* As stated, the state-wide issues involving special education were resolved by a consent decree entered on August 30, 2000. According to the terms of this state-wide decree, any claims in the area of special education would be raised with the state defendants, that is, the Alabama State Board of Education, its members, the State Superintendent of Education, and the Governor of Alabama. Even if any such claim involving the Butler County School System were pending, it could not prevent a declaration of unitary status since the matter would be addressed with the state defendants as part of the commitments made under the 2000 state-wide decree.

*5. Monitoring:* The Butler County School Board was required to file annual reports describing its efforts in implementing the provisions of the 1998 consent decree. The plaintiff parties were given the opportunity to advise the board of any continued concerns about these efforts. A progress report was filed by the United States outlining the positions of the parties for discussion at the annual status conference.

*6. Future Actions:* In an effort to provide continued attention to the areas of concern raised by the plaintiff parties, particularly those raised at the annual status conferences, the Butler County School Board passed a resolution on June 21, 2001, adopting policies that commit to fair and equal treatment of faculty and other employees and to equitable access to all educational programs and activities by students. The resolution also adopted the school district's plan for the future which sets forth policies and activities addressing the following areas: faculty recruitment and assignment; student assignment and instruction; extracurricular activities; student discipline; and special education. The plan for the future demonstrates a long-range policy for continued attention to these issues.

### C. Objections to Termination of the Litigation

After the Butler County School Board and its members and superintendent filed their motion for declaration of unitary status and termination of this litigation, the court required publication and notice of the proposed dismissal, scheduled a fairness hearing, and established procedures for filing comments and objections. Many objections were filed with the court, including petitions signed by dozens of people objecting to the dismissal. Many of the comments were similar, basically stating that dismissal was inappropriate since it had taken the school board 30 years to come into compliance.

 There were numerous general objections relating to faculty hiring and complaints that the percentage of black faculty members was too low, some stating that the percentage of faculty should mirror the racial ratio of students. However, the appropriate measure in assessing whether there is employment discrimination by school districts in hiring is not a comparison between the percentage of teachers and the percentage of students who are black, but rather a comparison between "the racial composition of [the] teaching staff and the racial composition of the qualified public school teacher population in the relevant labor market." *Hazelwood Sch. Dist. v. United States,* 433 U.S. 299, 308, 97 S.Ct. 2736, 2742, 53 L.Ed.2d 768 (1977).

Other general complaints related to allegations that black students were being steered towards special education and that there were disparities in student discipline. There were a handful of individual complaints such as specific discipline incidents and faculty hiring or non-hiring.

At the fairness hearing, four community members made statements objecting to dismissal of the case. One was a former employee who complained that a current employee was receiving services which were not offered to her when she was employed by the school board. Another objected to dismissal because of a lack of minority teachers and stated that stronger recruitment steps were required. Another complained that a librarian position was given to an unqualified white employee. The other issue raised related to student discipline and that black students, particularly males, were being disproportionately disciplined.

Following these statements, the Butler County Superintendent, Michael Reed, testified regarding the school district's efforts to implement the 1998 consent decree, describing, in particular, efforts at recruitment of minority teachers. He explained the alleged discipline disparities as somewhat misleading since the filed reports reflected only the number of referrals, not the number of individual students disciplined, that is, a few students were referred for disciplinary action a number of times. The superintendent also noted that

student enrollment at all of the district's schools was predominately African–American. He specifically addressed the complaints about the librarian position by explaining that two elementary school classes had been combined and that one of the teachers was placed in the library with emergency certification. Counsel for the plaintiff parties cross-examined the superintendent and again addressed the issues raised in the objections to dismissal of the case. The court is satisfied that all of the issues raised were satisfactorily addressed by counsel.

## III. CONCLUSION

On the basis of the record evidence, witness testimony, and averments of counsel, the court finds that the Butler County Board of Education and its members and superintendent have met the standards entitling the school district to a declaration of unitary status and termination of this litigation. They have fully and satisfactorily complied with the orders of this court. The vestiges of the prior *de jure* segregated school system have been eliminated to the extent practicable. The court also finds that the school board and its members and superintendent have demonstrated a good-faith commitment to the whole of the court's decrees and to those provisions of the law and the Constitution that were the predicate for judicial intervention in this school system in the first instance through their compliance with the court's orders over the years, through their good-faith implementation of their contractual obligations under the 1998 consent decree and through their adoption of specific policies and actions that extend into the future demonstrating their commitment to the operation of a school system in compliance with the Constitution.

The plaintiff parties have succeeded in the task they began decades ago to seek the end of the seemingly immovable *de jure* system of school segregation in Butler County. This lawsuit sought to bring the school district into compliance with the constitutional requirement of equal protection under the law, and the court states today that they have succeeded. *NAACP, Jacksonville Branch v. Duval County School*, 273 F.3d 960, 976 (11th Cir.2001). By its actions today, the court recognizes and congratulates the sustained efforts of the parties. In so doing, however, the court notes, as the Eleventh Circuit Court of Appeals stated in *Duval County School*, that "[t]he Board, and the people of [Butler] County who, in the end, govern their school system, must be aware that the door through which they leave the courthouse is not locked behind them. They will undoubtedly find that this is so if they fail to maintain the unitary system [the court] conclude[s] exists today." *Id.* at 976–77.

Therefore, with the judgment the court will enter today, control over the Butler County School System will be properly returned to the Butler County School Board and its members and superintendent. The motion for declaration of unitary status and termination of this litigation filed by the board and its members and superintendent will be granted, and all outstanding orders and injunctions will be dissolved and this litigation dismissed as to the board and its members and superintendent. However, the state defendants are not dismissed, and the orders dealing with the state-wide "special education" and "facilities" issues are not dissolved.

## JUDGMENT

In accordance with the memorandum opinion entered this day, it is the ORDER, JUDGMENT, and DECREE of the court as follows:

(1) The motion for declaration of unitary status and termination of this litigation, filed by defendants Butler County School Board, its members, and County Superintendent of Education on September 17, 2001 (doc. no. 112), is granted.

(2) The Butler County School System is DECLARED to be unitary.

(3) All outstanding orders and injunctions are dissolved as to defendants Butler County School Board, its members, and County Superintendent of Education.

(4) This litigation is dismissed as to defendants Butler County School Board, its members, and County Superintendent of Education;

(5) Defendants Butler County School Board, its members, and County Superintendent of Education are dismissed.

It is further ORDERED that the state defendants (the Alabama State Board of Education, its members, the State Superintendent of Education, and the Governor of Alabama) are not dismissed and that the orders dealing with the state-wide "special education" and "facilities" issues are not dissolved.